## EDWARD HOLLOWAY v. WILLIAM G. SCHIELD and WALTER E. FISK; WILLIAM G. SCHIELD, Appellant.

### Division One, June 16, 1922.

**NEGLIGENCE: Automobile Driver: Borrowed Servant: Liability of Temporary Master.** Where defendant arranged with the owner of a garage to store, oil and clean his automobile, with the distinct understanding between them that the delivery of the car to the defendants' residence was not to be a part of the service rendered and that if delivered it was to be done at the defendant's risk, and the defendant came by the garage and one of the garage owner's employees, without any direction from said owner, got in the automobile with defendant, drove him to his home, and as he returned injured plaintiff by negligently driving the car, the said employee, being thus temporarily loaned to defendant, was for said service under defendant's control, and it cannot be held as a matter of law that the relation of master and servant did not exist between defendant and said employee, but the question was one for the jury to determine.

Appeal from St. Louis City Circuit Court.—*Hon. Benjamin J. Klene,* Judge.

AFFIRMED.

*Bryan, Williams & Cave* for appellant.

The court erred in sustaining the plaintiff's motion for new trial as to the defendant Schield and in setting aside the judgment theretofore entered in favor of the defendant Schield for the following reasons:  (1)  The

petition charged (and the plaintiff is bound thereby) that the defendant Schield employed and instructed the defendant Fisk to store Schield's car in the garage of Fisk, to call for and deliver said car from said garage to defendant Schield, and the petition charges that the accident happened while the car was being so called for or delivered and the evidence unquestionably shows that Fisk was an independent contractor. (2) The facts are undisputed, and under the facts and under these allegations of the petition, as a matter of law, the relation of master and servant did not exist between the defendant Schield and the driver O'Dowd. Sweetnam v. Snow, L. R. A. 1916 B, (Mich.) 757; Ouellette v. Superior Motor Works, 157 Wis. 531, 52 L. R. A. (N. S.) 299; Neff v. Brandies, 39 L. R. A. (N. S.) (Neb.) 933. Cases cited in the notes to the three foregoing cases: Flori v. Dolph, 192 S. W. (Mo.) 949; Standard Oil Co. v. Anderson, 212 U. S. 215; Scherer v. Bryant, 273 Mo. 597; Alexander v. Pub. Co., 197 Mo. App. 601; Simmons v. Murray, 232 S. W. 754. (3) The petition alleges (and the plaintiff is bound thereby) that the defendants Fisks were employed to deliver the car and under that allegation there can be no recovery on the theory that O'Dowd was loaned to defendant Schield to deliver the car and thus became the servant of Schield. (4) The petition alleges (and the plaintiff is bound thereby) that the defendant Schield employed defendant Fisk to call for and deliver the car and contains no allegation of any agreement on the part of Schield to be liable for the acts of Fisk or his employees in so doing. And absent such allegation, the plaintiff cannot be permitted to recover on any such agreement in any ordinary action of tort, even if such an agreement existed.

*John F. Maloney* and *Safford & Marsalek* for respondent.

(1) Where a servant, in the general employ of one person, is borrowed by another to perform a specific

service, the third person, and not the general employer, is responsible for the servant's negligence while performing said specific service. Scherer v. Bryant, 273 Mo. 596; Hilsdorf v. Railroad, 45 Mo. 98; Healey v. Range Co., 161 Mo. App. 483; Alexander v. Pub. Co., 197 Mo. App. 601; Atherton v. Coal Co., 106 Mo. App. 591; Garven v. Railroad, 100 Mo. App. 617; Snider v. Crawford, 47 Mo. App. 13; Brown v. Smith, 68 Ga. 274, 12 S. E. 411; Wood v. Cobb, 13 Allen (Mass.) 58. (2) Under the terms of the arrangement between Schield and Fisk, O'Dowd, while driving the car from Schield's home to the garage, was the servant of Schield. Authorities above; Smith v. Railroad, 85 Mo. 430; Thayer v. Checkley, 127 Fed. 556. (3) The petition alleges "that in taking said motor vehicle from the Buckingham Hotel, in the city of St. Louis, to 718 Bayard Avenue, defendants herein operated said machine," etc. The allegation that defendant Schield employed defendant Fisk to store and wash the machine at his garage, and to deliver it from the garage "to defendant W. G. Schield" is not repugnant to the former statement, so as to preclude plaintiff from showing that at the time of the accident Schield was operating it through another servant, O'Dowd. Hutchinson v. Safety Gate Co., 247 Mo. 110; Fulwider v. Gas. Co., 216 Mo. 591; Rinard v. Railroad, 164 Mo. 270; Hendricks v. Calloway, 211 Mo. 536, 558; Henderson v. Henderson, 55 Mo. 546; Secs. 1160, 1257, R. S. 1919.

ELDER, J.—This is an appeal by defendant William G. Schield from an order setting aside a judgment rendered on a directed verdict in favor of said defendant and granting plaintiff a new trial. In granting a new trial as to Schield, the trial court also sustained a motion for a new trial filed by defendant Fisk, against whom a verdict and judgment for $8250 had been rendered. We are here concerned, however, solely with the appeal of defendant Schield.

Plaintiff's action is for damages for personal injuries sustained when struck by defendant Schield's automobile. The petition alleges in part as follows:

"That at all times herein referred to defendant W. C. Schield owned the motor vehicle herein referred to, and employed and instructed defendants Walter E. Fisk and Edith Fisk to store and wash said motor vehicle at a garage at or near 718 Bayard Avenue and deliver said motor vehicle from said point to defendant W. G. Schield; that in taking said motor vehicle from the Buckingham Hotel, in the city of St. Louis, to 718 Bayard Avenue, defendants herein operated said machine eastwardly in a public highway on Delmar Boulevard at or near Aubert Avenue, in the city of St. Louis, and turned same north into Aubert Avenue toward plaintiff, who was then riding westwardly on a motor-cycle in a public highway on Delmar Boulevard at or near Aubert Avenue, and defendants in so doing negligently operated said motor vehicle by means of gasoline at an excessive, unsafe and dangerous rate of speed, negligently caused and permitted said motor vehicle to turn suddenly northwardly, negligently failed to give plaintiff any reasonable, timely and sufficient warning of their intention to cause and permit said motor vehicle to turn, negligently failed to keep a vigilant watch ahead of said motor vehicle, negligently failed to give plaintiff any reasonable, timely and sufficient warning of the approach of said motor vehicle, negligently failed to properly guide said motor vehicle, negligently failed to reduce the speed of and stop said motor vehicle, and negligently operated said motor vehicle without any reasonably good and sufficient brakes, . . . and defendants, by the negligence aforesaid, directly and proximately caused said motor vehicle, propelled by gasoline, as aforesaid, to strike plaintiff and the motor-cycle he was riding upon, as aforesaid, and thereby directly and proximately caused plaintiff to come in violent contact with said motor-cycle and the pavement of said street and objects thereon, and

thereby to be injured and damaged as hereinafter set out.''

The answer of defendant Schield was a general denial, coupled with a plea of contributory negligence. The abstract of the record recites that:

''There was evidence tending to prove the formal allegations of the petition, and that the plaintiff was injured on the 3rd day of May, 1918, as a result of being struck by an automobile owned by the defendant, W. G. Schield, which, at the time, was being driven by one Henry J. O'Dowd eastwardly along Delmar Avenue, in the city of St. Louis, and turning northwardly into Aubert Avenue, in the city of St. Louis. The ownership of the automobile by the defendant, W. G. Schield, was admitted. There was evidence of negligence on the part of the driver, Henry J. O'Dowd, offered by the plaintiff, sufficient to take the case to the jury under the allegations of the petition.

''There was evidence tending to show that the defendant, Walter E. Fisk, operated a public garage at 718 North Bayard Avenue, in the city of St. Louis, and that the defendant, W. G. Schield, some time prior to the accident, had made an arrangement with the defendant, Fisk, for the storing of the said automobile; and that Henry J. O'Dowd was an employee of the defendant, Fisk, and was driving the automobile at the time of the accident.

''The only evidence with regard to the relations existing between the defendant W. G. Schield and the defendant Walter E. Fisk and Henry J. O'Dowd, who was driving the automobile at the time of the accident, was the testimony of Walter E. Fisk.''

Defendant Fisk testified in part as follows:

''Q.   Mr. Fisk, on May 3, 1918, did you have in your employ at the Standard Garage a man Henry O'Dowd? A.   Yes, sir.

''Q.   He is now dead, is he not?   A.   Yes, sir.

''Q.   What was his occupation at the Standard Garage?   A.   Well, his occupation was cleaning cars and general work around there.

"Q. Was he employed to work as a chauffeur there? A. He was employed in the garage to clean cars.

"Q. Did he have any work—did you require him to do any work outside of this garage? A. No, sir.

"Q. Well, did the Standard Garage, the business organization, the partnership, ever require him to do any work outside of the garage? A. No, sir.

"Q. Now, will you tell the jury what the arrangement was between your concern and Mr. Schield as to what you were to do and what you were not to do, with reference to his machine? A. Yes, I can explain that.

"Q. Will you explain, please? A. Mr. Schield drover over there one—well, about a year before the accident—to make arrangements about me to take care of his automobile, and he asked me my price and I told him, and he asked me the price of what I would charge him to grease it twice a month, and I told him. Then after we got through he said he wanted his car brought over to the Buckingham, and I said I wouldn't run any risk of taking it over there—I couldn't afford to—that the man—

"MR. MARSALEK: Continue, please. A. And I told Mr. Schield that I had always had it on my bill-heads and had a sign in the garage, 'Not responsible for any car delivered or called for,' and had it on my bill-heads, 'By a man requesting his car delivered would make the chauffeur his employee and not mine,' and I told Mr. Schield the same thing.

"Q. When you described the arrangement under which you would take care of his car and told him these things, did he then go ahead and have you to take care of it? A. Yes, sir.

"Q. And from then on was the car ever delivered to him at the Buckingham, or did anyone in connection with the garage ever go to the Buckingham and get it? A. Yes, sir. . . .

"Q. Do you know whether Mr. O'Dowd on that day, on May 3, 1918, was driving Mr. Schield's car? A. Yes, sir.

"Q. Do you know how he came to be driving Mr. Schield's car?

"Judge Cave: Did you see O'Dowd drive the car that day? A. I was just going to tell you that Mr. Schield drove up there and Henry O'Dowd got in to take him home.

"Mr. Marsalek: Mr. Schield drove to the garage, did he? A. Yes, sir.

"Q. And Mr. O'Dowd got into the machine? A. Yes, sir.

"Q. Did you hear anything that transpired between Schield and O'Dowd at the time O'Dowd got into the machine? A. No, sir.

"Q. And in which direction did they go? A. They naturally turned around there and started for the Buckingham, and started that way.

"Q. Went in the direction towards the Buckingham Hotel? A. Yes, sir.

"Q. When did you next see O'Dowd? A. After the accident. . . .

"Q. During the year previous to this time had any employee of the garage on any other occasion gone to Mr. Schield's home for the purpose of getting his machine and bringing it to the garage? A. Yes, sir. .

"Q. What other employees of the garage had done that? A. Well, different men; I can't just say who they were.

"Q. Did the garage ever make any charge against Mr. Schield for that service? A. No, sir."
On cross-examination the witness testified:

"Q. And the compensation these men received for performing this work of going to the Buckingham and doing this work, was paid by you, wasn't it? A. No, sir.

"Q. Did Mr. Schield ever pay them anything? A. I couldn't answer that; you would have to ask him.

"Q. You directed these men to go there and do these things, did you not? A. Direct them?

"Q. When Mr. Schield would telephone the Standard Garage you would call O'Dowd or whomever else

you wanted and tell them to go and get it? A. Yes, sir.

"Q. And on the occasion when you went and got that car did Schield pay you anything for coming and getting his car? A. No, sir.

"Q. Did you expect anything? A. No, sir.

"Q. You went there and got his car and brought it back as part of your contract with Schield? A. Just for accommodation.

"Q. You mean, every day in the week you sent to the Buckingham Hotel and got that automobile or delivered it, as a matter of accommodation? A. Yes, sir.

"Q. That had nothing to do with the keeping of the car at your garage? A. No, sir."

Referring to the agreement made with Schield the witness testified:

"Q. What did you tell him the rate was? A. Thirty dollars a month, for washing and cleaning it, and taking care of it; the same as I charged everybody else.

"Q. Yes. A. And then he says, 'I want my car oiled twice a month,' and I says, 'That will cost you so much extra,' and now, he says, he would like to have his car brought occasionally and called for, and I says, 'All right, but,' I says, 'it will be entirely at your risk, I will have nothing to do with that whatever.' I says, 'There is no charge for it,' and I says, 'I will have nothing to do with it,' and I says, 'There are a lot of chauffeurs around here I can stop and send them over with your car,' but I says, 'I will have nothing to do with the delivery of it, take no risk,' and I says, 'I couldn't afford to for the price I am charging you.'

"Q. Is that all? A. That is all he said, and he agreed to it.

"Q. What did he say? A. He says, 'All right,' He says, 'You wouldn't send my car over with a man you thought would break it up?' 'No,' I says, 'I would use the best of my judgment.''

"Q. This man O'Dowd was the one you used on this particular occasion? A. Yes, sir.

"Q. He was a regular employee of yours, was he? A. Yes, sir.

"Q. You paid him a salary? A. Yes, sir.

"Q. The other men you sent over there to get this car or to take this car to the Buckingham, they were employees of yours, were they not? A. No, sir.

"Q. But O'Dowd was? A. Yes, sir."

Testifying on his own behalf the witness stated:

"Q. Will you just tell the jury what took place and what occurred on this 3rd day of May, 1918, how O'Dowd came to be in the machine and what happened? A. Well, Mr. Schield drove up and he stopped out in front, like he generally done, and, of course, you could see the man stop there, and Henry O'Dowd just run out and jumped in the rig and he knew he wanted to go home, and that is about all I know of it.

"Q. About what time was that? A. Oh, about 9:45, I should judge.

"Q. Did you say anything to Mr. O'Dowd on that occasion as to where he was going and what he should do? A. No.

"Q. Didn't you know where the machine was driven to, of your own knowledge? A. I do not.

"Q. Do you know what instructions, if any, were given him as to where the machine should be returned or what should be done with it? A. I couldn't say.

"Q. Did you yourself give him any instructions as to what he should do with that automobile or with reference to it after it left your garage? A. No, sir."

The foregoing sufficiently outlines the case for the purposes of this review.

I. Appellant contends that the court erred in sustaining plaintiff's motion for new trial as to defendant Schield for the reasons: (a) That under the allegations of the petition and under the evidence, defendant Fisk was an independent contractor and therefore defendant Schield was not liable for the acts of Fisk in calling for and delivering the car in question; (b) that

as a matter of law, the relation of master and servant did not exist between defendant Schield and the driver O'Dowd.

To sustain the contention made appellant relies upon the cases of Sweetnam v. Snow, L. R. A. 1916 B, (Mich.) 757; Ouellette v. Superior Motor & Machine Works, 52 L. R. A. (N. S.) (Wis.) 299; Neff v. Brandeis, 39 L. R. A. (N. S.) (Neb.) 933.

**Other Cases Distinguished.**

In Sweetnam v. Snow, supra, plaintiff was struck by an automobile owned by the defendant, but driven at the time by an employee of a public garage where the defendant kept his car. This employee had called for the car at the residence of defendant and was returning the same to the garage. The testimony of the garage owner with respect to his contract with the defendant was that it covered the storing, washing, polishing and oiling of the car and the delivery of the same at the request of defendant "at such place in Grand Rapids as he might designate, and also the getting of his car at such place in Grand Rapids as he might designate and the returning of it to my garage. . . . I agreed with Mr. Snow that part of the services to be rendered by me for $15 a month with respect to his car was to cause his car to be taken on request from his house to my garage." It was held that when the injury was sustained, the employee of the garage owner was engaged in the work of performing the contract of his employer, and that the defendant Snow was in no way legally responsible for his misconduct.

In Ouellette v. Superior Motor & Machine Works, supra, plaintiff was run down by an automobile driven by an employee of defendant. The automobile was owned by one Reverend Fardy and at the time of the accident he was riding therein. It appears, however, that he did not assume to direct or control the method or manner of driving, further than to tell the driver where to go. The automobile was stored at the garage

of defendant under an agreement by which defendant, for a compensation, furnished a chauffeur to drive the car whenever requested. The trial court directed a verdict in favor of defendant, holding that at the time of the accident the chauffeur was acting as the servant of Reverend Fardy. On appeal it was held that it was error to direct a verdict, as the relation of master and servant existed between defendant and the chauffeur, the rule of *respondeat superior* applying.

In Neff v. Brandeis, supra, plaintiff was injured by an automobile owned by defendant Brandeis. At the time of the accident the car had been loaned by defendant to his brother, and the same was being driven by an employee of a garage where defendant stored the car. The garage keeper testified with respect to his agreement with the owner of the automobile as follows: "I was to wash the machine, polish it, store it, and keep it ready for running at all times. I was to furnish a man at any time Mr. Brandeis might call for it. Mr. Brandeis was to pay me so much a month for storing the machine, washing it, keeping it in good shape, and was also to pay me a stated sum for the man." It was held that the owner of the car was not liable for the negligence of the chauffeur as he had merely loaned the car to another and had no control over its movements or the conduct of the chauffeur.

Each of the above cases is distinguishable from the case at bar. In the Sweetnam Case the garage keeper had expressly contracted and agreed to deliver the car at such place as might be designated by the owner and to call for and return the same to the garage. The monthly compensation paid him included the service of calling for the car at the residence of the owner and returning it to the garage. In the Ouellette Case the garage keeper agreed, for a compensation, to furnish the chauffeur whenever requested. In the Neff Case the car was being used by another at the time of the accident. Furthermore, as in the Sweetnam and Ouellette cases, it

was agreed that a chauffeur should be furnished, for which a compensation was paid. In the case at bar defendant Fisk had not specially contracted to call for and deliver the car. He testified that when such service was rendered he did so ''just for accommodation,'' and that he made no charge therefor. Furthermore, he states that he told defendant Schield, ''It will be entirely at your risk, I will have nothing to do with it whatever;'' ''by a man requesting his car delivered would make the chauffeur his employee and not mine;'' ''I would send a man over at his risk, that I would have absolutely nothing to do with the delivering of his car.'' The dissimilarity of the case from the cases cited by appellant is clearly apparent.

II. Respondent contends that the doctrine here applicable is that where the general servant of one person is loaned or furnished to a third person for a specific service, he thereupon becomes the servant of the one for whom the service is being performed, and the latter is liable for his negligence. This doctrine finds expression in Healy v. Wrought Iron Range Co., 161 Mo. App. 483; Hilsdorf v. City of St. Louis, 45 Mo. 94; Smith v. Railroad, 85 Mo. 418, and Garven v. Railway Co., 100 Mo. App. 617, all of which cases are instructive on the question presented.

Liability of Temporary Master.

In Sweetnam v. Snow, supra, relied on by appellant, it is said, l. c. 761, that the test to determine the legal responsibility of a third person who borrows the servant of another is ''whether, in the particular service performed by him [the servant], he continues subject to the control and direction of his master as to the means to be employed and the result to be achieved, or becomes subject to that of the third person.''

As stated in 26 Cyc. 1522: ''A person who avails himself of the use, temporarily, of the services of a servant regularly employed by another person may be liable as master for the acts of such servant during the temporary service. The test is whether in the partic-

ular service which he is engaged or requested to perform he continues liable to the direction and control of his original master or becomes subject to that of the person to whom he is lent or hired, or who requests his services. It is not so much the actual exercise of control which is regarded as the right to exercise such control.''

Thus in Brown v. Smith & Kelly, 86 Ga. 274, one Dixon had a vessel loaded with coal and employed plaintiff to unload it, hiring a pair of mules and a driver from defendants. The mules were hitched to a rope, to which was attached a tub used in hoisting the coal from the hold of the vessel. While plaintiff was engaged in unhooking the tub from the rope, the driver of the mules permitted them to walk off, jerking the tub and catching plaintiff's hand between the same and the side of the hatchway of the vessel. It was held that, as defendants had no right to give any directions to the driver while in the service of Dixon, he therefore became the special servant of Dixon for that occasion, and defendants were not liable for his negligent acts while thus employed.

In Wood v. Cobb, 95 Mass. 58, defendants, who were dealers in fish, employed a truckman each Friday to deliver fish to their customers. He, being sick, told his boy to get some help if necessary. The boy, with the assent of defendants, procured one of their employees to drive a team and deliver the fish. While doing so the said employee drove against plaintiff and injured him. It was held that no liability attached to defendants, as the person in charge of the team at the time of the injury was not under the control of defendants, but was acting as the servant of the truckman.

The case of Janik v. Ford Motor Co., 52 L. R. A. (N. S.) 294 (Mich.), is enlightening upon the question of liability for the negligence of a borrowed chauffeur. There one Werner purchased an automobile from the defendant company at Detroit. Being an experienced driver, but being unfamiliar with city driving in the

Holloway v. Schield.

congested streets, Werner asked defendant for a driver
to go with him and pilot him to the city limits, from
which place he would drive the car to his destination.
A regular employee of defendant, one Groholski, was
furnished, and Werner told him that he desired to go
over Michigan Avenue. On the way plaintiff was struck
and injured. The trial court directed a verdict for de-
fendant. On appeal the judgment was affirmed, it being
held that at the time of the accident Groholski was the
servant of Werner. The court said, l. c. 299: "During
Groholski's absence from the salesrooms in this service
he was doing the work of Werner, to whom he was
gratuitously loaned, on the initiative and request of
Werner, who had full right to dictate as to his own prop-
erty and direct in what manner the car should be oper-
ated."

As illustrative of the principle contended for by
respondent, and as particularly pertinent to the instant
case, we find the case of Jimmo v. Frick, 255 Pa. St. 353.
There defendant Frick kept his automobile at a garage
under a contract for storage at $9 per month, cleaning
and oiling to be done as required. When defendant
wished to use the car, the garage company agreed to
furnish a driver at seventy-cents an hour, selecting any
one of its employees. The drivers were paid by the
garage company, but were required to obey the orders of
defendant in operating the car. On the morning when
plaintiff was injured, the garage company had sent de-
fendant's car to his residence with a chauffeur. The chauf-
feur then drove defendant to the railroad station where
he alighted. While the chauffeur was returning the car
to the garage plaintiff was struck. It was held that de-
fendant was liable for the driver's negligence. The
court said, at page 356:

"It is clear, we think, that while Gannon (the driv-
er) was in the general employment of the automobile
company, he was the servant of defendant as long as he
had charge of and was operating the latter's car on the

morning of the accident. A person may be in the employment and pay of another person, and yet not necessarily make the latter the master and responsible for his acts. The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct.''

In the case under review defendant Schield drove his car up to the garage and stopped. O'Dowd ran out and got in the machine, without any order or instructions from defendant Fisk, accompanied Schield to his home, and was returning the car to the garage when the accident happened. Manifestly, in performing that service he was subject to the control, and acting pursuant to the direction, of Schield. Moreover, he was doing a work which his master, Fisk, had stipulated should be done entirely at the risk of Schield. Under such circumstances, and in the light of the foregoing authorities, it cannot be held as a matter of law that the relation of master and servant did not exist between Schield and the driver O'Dowd. The question was one for the jury. [Scherer v. Bryant, 273 Mo. 597, l. c. 603-605.]

Under this view of the facts of the case, all discussion of law relating to the liability of defendant Fisk as an independent contractor is immaterial and unnecessary.

It follows that no error was committed in setting aside the judgment in favor of defendant Schield and granting plaintiff a new trial. The action of the trial court is affirmed and the cause remanded. *James T. Blair* and *Graves, JJ.,* concur.