LOVINNIA MARDEN, RESPONDENT, v. E. K. RADFORD, APPELLANT.—
84 S. W. (2d) 947.

Kansas City Court of Appeals.  June 24, 1935.

*Charno & Drummond* for respondent.

*Henry S. Conrad, L. E. Durham, Hale Houts, Ilus M. Lee* and *Wright Conrad* for appellant.

REYNOLDS, C.—This is an action by plaintiff filed in the Circuit Court of Jackson County on October 27, 1932, against the defendant to recover damages for personal injuries sustained by her on or about August 13, 1932, in a fall in a kitchenette apartment, in the Claremont Hotel located at 3129 Forest Avenue, Kansas City, Missouri, occupied under a contract by her with the defendant as the

owner thereof, which injuries were alleged to have been occasioned by the negligence of the defendant, the particulars of which negligence appear from the petition hereinafter set out. From a judgment of $3,000 rendered against him upon the trial, defendant, after unsuccessful motions for a new trial and in arrest of judgment, appeals.

The cause was tried upon a first amended petition, which is as follows:

"Comes now plaintiff and for her cause of action against defendant, leave to file this first amended petition having been given by the court, states that now and at all the times mentioned herein, defendant is and has been the owner of the Claremont Hotel, located at what is known as 3129 Forest Avenue, in Kansas City, Missouri; that said hotel is what is known as an apartment hotel; that defendant obtained an occupation license from the City of Kansas City as a hotel keeper, by representing that he was operating a hotel; that said hotel contains about seventy-five (75) small apartments, suites of rooms and rooms; that all of said rooms and suites and apartments are completely furnished and the furnishings thereof are owned by defendant;

"That on or about the 13th day of August, 1932, plaintiff had rented from defendant and was occupying a certain kitchenette apartment or suite in said hotel, known as No. 108, which consisted of one room and a small kitchen, both room and dressing room; that defendant furnished plaintiff, as well as all the other occupants of said hotel, gas, water, electricity for lighting and other purposes, linens, dishes, silverware, telephone and all furniture; that defendant cleaned all the windows in said hotel, including the windows in plaintiff's suite or apartment, swept the hallways in said hotel and kept them in order and removed garbage accumulating in plaintiff's suite or apartment; and maintained in said hotel an office and a manager; and said hotel required plaintiff to deposit the key to her apartment or suite in said office during plaintiff's absence from her suite or apartment; and maintained and employed servants and employees to care for plaintiff's said suite or apartment, as well as other suites and apartments in said hotel, and to keep the same in habitable and good condition, and otherwise retained to defendant the control and supervision over the said apartments and suites in said hotel, including that occupied by plaintiff.

"Plaintiff further states that in the kitchen of her said suite or apartment was located a sink and a drainboard; that said drainboard was a shelf-like arrangement, constructed of wood and supported by certain wooden supports or braces; that on or about the 13th day of August, 1932, plaintiff desired to turn on the electric light in her said kitchen; that said light was attached to the ceiling

of said kitchen and in order to reach the switch of said light and turn the same on, it became necessary for plaintiff to stand on her tiptoes; and in order to maintain plaintiff's balance and to avoid falling, while turning on said light, plaintiff caught hold of said drainboard; and while plaintiff was in said position, in attempting to turn on said light as aforesaid, the said drainboard became detached from the wall and collapsed, causing plaintiff to be thrown to the floor of said kitchen with great force and violence and injuring her as hereinafter set forth.

"Plaintiff states that defendant failed to exercise ordinary care to keep plaintiff's said apartment or suite in a reasonably safe condition and to keep the said drainboard and the supports thereof in a reasonably safe condition, in that defendant negligently and carelessly maintained said drainboard in a weakened condition and supported by braces of insufficient strength and of rotten and decayed wood; and negligently and carelessly permitted said drainboard and the supports thereof to become weakened, rotten, decayed, unsafe and dangerous and likely to collapse and fall, and likely to cause injuries to the occupants of said apartment.

Plaintiff states that prior to the 13th day of August, 1932, it had been customary for her and for the other occupants of said suite or apartment to maintain their balance while turning on said light, by the use of said drainboard as described herein; and that said custom and such use thereof was well known to defendant and his agents, servants and employees;

"That as a direct and proximate result of the aforesaid negligence and carelessness of defendant and of plaintiff's said fall, plaintiff's right arm was broken and the bones of said arm and the right wrist and hand were fractured, and the ligaments, muscles, nerves and tendons were torn, bruised, wrenched and injured; that she suffered what is known as a compound fracture of her right wrist; that by reason of said injuries, plaintiff has suffered much physical pain and mental anguish; that her right arm and right hand have been weakened and she has suffered a loss of the use thereof; her capacity to labor has been impaired; she has been deprived of her sleep and her natural rest; her physical efficiency and endurance have been diminished; that all of plaintiff's said damages and injuries are permanent, lasting and progressive.

"Wherefore, plaintiff prays damages against defendant in the amount of seven thousand five hundred dollars ($7,500) and all costs in this behalf expended."

The defendant made answer to such first amended petition by way of general denial and a plea of contributory negligence upon the plaintiff's part.

There was evidence tending to show that the Claremont Hotel was a large, three-story building containing seventy-five units or apartments, some consisting of several rooms and some of kitchenette suites of several sizes, of which defendant was the lessee; that entrance to the rooms was gained through the hotel lobby, which was furnished with tables, lamps, divans, and chairs; that the guests used this lobby in the evening for lounging and playing bridge; that in this lobby was located the hotel office, in charge of the hotel manager; that there were also a telephone switchboard and the hotel desk; that, near the desk, was a pigeonhole arrangement where the mail and the keys to the rooms and apartments were kept. Defendant testified that he controlled the entire building. Defendant called his establishment the "Hotel Claremont" and had bills printed upon which appeared the name "Hotel Claremont." Defendant operated this establishment under an hotel keeper's license. It was listed in the telephone directory as an hotel, of which defendant had knowledge. Defendant was manager of another establishment called the "Linmont," but the Linmont was classified as an apartment hotel. Plaintiff occupied what defendant called a one-room kitchenette, being apartment number 108. The plaintiff took the room furnished and equipped. Defendant furnished all of the furniture and equipment required for its use and occupancy by plaintiff. It consisted of living room furniture and kitchenette equipment with bed linen, carpets on the floor, dishes, table linens, silverware, and other articles. Defendant furnished heat, gas, water, telephone service, and electricity for the apartment, all included in the price agreed to be paid by plaintiff for the occupancy of the apartment furnished and equipped. Plaintiff cooked with gas received by the hotel through its meter and furnished by it to her apartment. It was paid for by defendant. Electricity and water were furnished in the same manner. They were furnished by the defendant on his account and, in turn, supplied by him to plaintiff. The electric current was connected by plugs in the basement of the building in such a manner that defendant, by pulling out the plugs, could disconnect the current from the apartments, including plaintiff's. A telephone was furnished to plaintiff in her apartment but was listed under the name "Claremont Hotel." Defendant subscribed for telephone service under that name. The bill therefor was presented to him and paid by him. Defendant had two switchboard operators, who connected outside calls for plaintiff with her apartment. No charge was made against plaintiff for any such service, other than that included in the price being paid by her for the apartment. Defendant maintained his offices in the basement of the hotel. He employed a manager who looked after everything concerning the hotel. This manager lived and had her

home in the hotel. Defendant had in his employ a fireman who attended to the heating of the hotel and the various apartments therein, including that occupied by plaintiff. Defendant furnished a man whose duty it was to clean up inside and outside of the building and to make simple repairs. He was authorized to do minor jobs of repairing, such as cleaning sinks, installing light bulbs, and the like. If repairs were needed, however, over and above the very simple, a repairman was called in by defendant and paid by defendant. Defendant also employed painters and paperhangers, who worked as occasion required and as authorized by him. Defendant testified that he considered that he was under obligation to keep the apartments of the guests in habitable shape for them at all times at his own expense and that he considered that he was obliged to maintain the building generally. After plaintiff's injury, defendant caused the drainboard, through the falling of which she received the injury complained of, to be repaired and made no charge therefor against the plaintiff. The apartment was taken in plaintiff's name under an oral agreement therefor made by plaintiff and her daughters with defendant's manager, who lived in the building. Plaintiff's two daughters looked at the apartment which was shown them by defendant's manager. It was thereupon agreed that plaintiff and her daughters should occupy the apartment at and for the price of $32.50 per month, to be paid in weekly installments. If anything further was agreed upon, it is not revealed by the record. The first weekly installment was paid when plaintiff and her daughters moved in. Plaintiff and her daughters moved their wearing apparel and some minor articles of furniture, including a smoking stand and magazine rack, into the apartment at the time that they moved therein. Defendant furnished janitor service in the hall through which the apartment was reached, which included the disposal of garbage placed by plaintiff in the hall in the garbage bucket furnished for said purpose by the defendant. There was no common or public dining room in the building. There were no bellboys. Neither maid nor laundry service was furnished. The linens were laundered by plaintiff, and the dishes and silver were washed and cleaned by her. The plaintiff and her daughters kept house and entertained their friends in the apartment. The defendant kept the outside of the building in repair and the halls in repair and performed needed repairs in the apartments and the rooms without charge, except in cases where the repair was due to the fault of a tenant. The plaintiff and her daughters cleaned the rooms in the apartment and occupied the apartment as a family home, and the family meals were cooked therein. At the time that the agreement was made or at the time that plaintiff and her daughters moved into the apartment, she and her

daughters were furnished by defendant's manager with a key to the apartment. This key was attached to a large cardboard tag six or seven inches in length, two inches in width, and one-fourth inch in thickness, on which was stamped the number of plaintiff's apartment, 108, and the name "Claremont Hotel." One daughter testified that defendant's manager instructed her that the key must be left at the desk in the office and that such instruction was carried out. The other daughter testified that she was advised by the manager that the key could be left at the desk if they wished to leave it there. The defendant had two sets of keys to the apartment. Upon turning over one key to the plaintiff, he retained a duplicate key in his possession. Transient guests were received in the single room apartments which had no cooking facilities. The kitchenette apartments, such as that taken by the plaintiff, were permitted to be taken only upon a monthly or yearly basis, except in rare instances by way of accommodation to persons or families regularly occupying the apartments in the building. Defendant furnished maid service for the single rooms which he termed hotel rooms, but no maid service was furnished to other apartments in the building. There was evidence tending to show that, on or about August 13, 1932, while attempting to turn on the electric light in the kitchen, the plaintiff fell, suffering a Colle's fracture of her right arm and receiving the injuries complained of.

The evidence tends to show that there was only one light in the kitchen and that was located in the ceiling and was turned on and off by a snap in the ceiling and plaintiff was unable to reach this snap, except by standing on her tiptoes; that, at the time in question, in attempting to turn on the light, she stood on her tiptoes and maintained her balance by resting the fingers of her left hand on the drainboard attached to the kitchen sink in the apartment and used the other hand in an effort to turn on the electric light; that this was plaintiff's customary method of turning on the kitchen light and defendant's manager had knowledge of such fact prior to such time and had, upon several occasions, upon complaints made to her by plaintiff that the light was too high, promised to remedy it but had never done so; that, on the occasion in question, the drainboard fell; and that plaintiff was precipitated to the floor. There was evidence tending to show that the braces and supports of this drainboard were rotted, doty, and decayed; that, at the time of her injury, plaintiff was fifty-four years of age; that, as a result of her injury, the fingers of her right hand were stiff and she was unable to grasp small objects or to close her fingers; that her hand and arm were placed in splints for about five weeks after her injury, during which she suffered constant pain; and that, at the time of the trial, about one and

one-half years after the injury, her arm was practically useless and she still suffered pain in the wrist. There was evidence upon the part of plaintiff's physician to the effect that plaintiff suffered an impacted Colle's fracture; that, at the time of the trial, plaintiff was unable to close her fingers; and that, in his opinion, such condition was permanent. During the time that the plaintiff occupied the rooms of the apartment in question, bills for rent were presented to her by defendant, upon which her indebtedness was described as room rent.

The plaintiff's case proceeded upon the theory that plaintiff's occupancy of the apartment was that of a lodger and not that of a tenant; that her relation to the defendant was that of a lodger; and that no such relationship as that of landlord and tenant existed between her and defendant with respect to her occupancy of such apartment. At the close of plaintiff's evidence and again at the close of all of the evidence, defendant requested and the court refused instructions directing a verdict for the defendant; but, upon the other hand, the court submitted the case to the jury upon the theory upon plaintiff's part that, if she was occupying the apartment as a lodger as distinguished from a tenant and such fact was so found by the jury, a verdict would be authorized for her.

## OPINION.

■ The defendant upon this appeal assigns error predicated upon the action of the trial court in refusing his request for instructions directing a verdict in his behalf, both at the close of plaintiff's evidence and at the close of all of the evidence, and further assigns error predicated upon the action of the court in giving the instructions for plaintiff upon the submission of the cause and upon the refusal to give instructions requested by defendant upon the submission and also on the court's refusal to give his instruction L as requested and its amending the same and giving it as amended.

■ The plaintiff was permitted to recover below upon the theory that she was a lodger in defendant's building in her occupancy of the apartment therein and that her relation to defendant was that of a lodger and that defendant was therefore bound to keep the apartment in an ordinarily reasonable state of repair for plaintiff's use and occupancy thereof and was therefore liable to plaintiff for damages sustained by her by reason of his not so keeping it in such state of repair.

■ The first point made by defendant is that the trial court erred in refusing to give defendant's requested peremptory instruction directing a verdict for defendant at the close of all of the evidence. He contends that the evidence in the record admitted only of the conclusion that plaintiff's occupancy of the apartment in question

was that of a tenant and the relation of the defendant and the plaintiff with respect to such occupancy was that of landlord and tenant and therefore defendant was under no duty to plaintiff which required him to keep such apartment in repair and was not liable to her for damages for negligence, if any, by reason of any failure to keep it in an ordinarily safe condition of repair for her use; that plaintiff accepted it in the condition it was when she entered into her contract; that defendant was in no event liable to her for failure to keep it in repair in the absence of a contract by which he agreed to do so; and that there was no evidence of a contract to such effect. He contends that there was no evidence from which it might be found that plaintiff was a lodger and that, by her evidence and all of the evidence, she could be found to be only a tenant. If defendant's insistence be true that there is only one conclusion to be drawn from the evidence and that is that the relationship between plaintiff and defendant was that of landlord and tenant, then it follows that defendant is not liable in this proceeding and that the court erred in refusing such instructions.

It is well-settled law in Missouri that a landlord is not bound to repair in the absence of a contract so to do. [Peter Piper Tailoring Co. v. Dobbin, 195 Mo. App. 435, 192 S. W. 1044; Mahnken v. Gillespie, 329 Mo. 51, 43 S. W. (2d) 797.]

■ If, however, defendant's insistence is wrong and the evidence is such that it admits of the conclusion that plaintiff was a lodger, then the court was not in error in refusing such instructions. It seems admitted by the defendant that, if plaintiff occupied the premises in question as a lodger, defendant owed her a duty to keep the premises in repair (32 C. J., pp. 562-564); and she might therefore be entitled to recover.

Where the facts are disputed or where undisputed they are such that one conclusion or another may result therefrom, the court can not say, as a matter of law, that one conclusion rather than the other is to be drawn therefrom. Under such circumstances, the conclusion to be drawn is a question of fact or, at least, a mixed question of law and fact to be determined by the jury under proper instructions from the court. [Powers v. St. Louis Transit Co., 202 Mo. 267, 1. c. 280, 100 S. W. 655; Parrent v. Mobile & O. R. Co. (Mo.), 70 S. W. (2d) 1068, 1. c. 1073.]

■ There was no written contract or agreement between the parties clearly defining the relationship between them, upon which the court might pronounce the character of plaintiff's occupancy as being that of tenant or lodger, as the case might be, as a matter of law. The contract was entirely oral. There was very little said by the contracting parties at the time that the apartment was engaged. Defendant's manager showed the apartment and announced the price at which the

use thereof might be had; and, thereupon, plaintiff's daughters en-. gaged the apartment; and, afterward, plaintiff with her daughters entered and occupied the same.

Generally, the interpretation and the construction of an oral contract or one partly in writing are for the jury.

In the case of Kunz v. Chouteau (Mo. App.), 202 S. W. 443, 1. c. 445, the St. Louis Court of Appeals said: "While it is for the court to interpret a contract when it is in writing, if all, or as here claimed, a part of it, rested on parole, it presents an issue which should have been submitted to the jury by proper instructions."

The reason for the rule is that, under most oral agreements, different inferences may arise regarding the intention of the parties; and, when different inferences may be drawn, it is the province of the jury to determine the inferences presented. [Powers v. St. Louis Transit Co., supra; Parrent v. Mobile & O. R. Co., supra.]

The issue being thus, from the position of the parties, made to depend upon whether the plaintiff was a lodger or a tenant, it becomes important to find a true basis of distinction between the two.

The relation of landlord and tenant arises from contract between the parties, either express or implied, by which the exclusive possession and control or the right thereto of the rented premises is passed to the tenant.

The relation of landlord and tenant may be defined in general terms as that which arises from a contract by which one person occupies the real property of another with his permission and in subordination to his rights, the occupant being known as the tenant and the person in subordination to whom he occupies as the landlord. [35 C. J., pp. 951; Williams v. Treece, 184 Mo. App. 135, 168 S. W. 209.]

The authorities agree, as essential to such relationship, that there must be a reversion in the landlord; the creation of an estate in the tenant, at will or for a term less than that for which the landlord holds the same; the transfer of the exclusive possession and control of the premises to the tenant; and, generally speaking, a contract, either express or implied, between the parties. [35 C. J., pp. 952, 953, art. 2, paragraphs A to G inclusive.]

The term lodger has been variously defined as follows: A tenant of a part of another's house, one who for the time being has his home at his lodging place, one who has leave to inhabit another man's house, one who has a right to inhabit another man's house, one who inhabits a portion of a house of which another has the general possession and custody, one who lives at board or in a hired room or who has a bed in another's house, one who lives in a hired room or rooms in the house of another, one who occupies hired apartments in another's house. The term is also defined as a person who lives and

sleeps in a place, a person whose occupancy is a part of a house and subordinate to and in some degree under the control of a landlord or his representative. The term is used to indicate a personal relationship of some one lodging somewhere with somebody. According to the purposes for which it is used, the meaning of the term may vary. [38 C. J., p. 136.]

A lodger lodges with some one who has control over the place where he lodges. When the owner of a house takes a person to reside in part of it, such person has no exclusive right to the rooms appropriated to him. In order to constitute one a lodger, that one must be lodging with such other in the house of the other. Where the premises and the control thereof are given up by the proprietor to another, such other person is not a lodger but ordinarily a tenant.

A tenant is to be distinguished from a lodger, who occupies a room or a portion of a house under the control or occupancy of another and who has no interest in the real estate. [Stone v. City of Los Angeles (California Appeals), 299 Pac. 838, 1. c. 841.]

A lodging place is defined as a place of rest for a night or a residence for a time, a temporary habitation. [38 C. J., p. 137.]

A lodging house is defined as a house where lodgings are let. It is a term applied to houses containing furnished apartments which are let out by the week or by the month, without meals, or with breakfast simply. [38 C. J., p. 137.]

■ The chief distinction between a tenant and a lodger apparently rests in the character of the possession. A tenant has the exclusive legal possession of the premises, he and not the landlord being in control and responsible for the care and condition of the premises. A lodger, on the other hand, has merely a right to the use of the premises, the landlord retaining the control and being responsible for the care and attention necessary and retaining the right of access to the premises for such purpose. [16 R. C. L., pp. 552, 553, art. 23.]

■ Whether the relationship established by the hirer of rooms in the house of another be that of a tenant or a lodger depends upon the contract of hiring, gathered from its terms and interpreted in the light of surrounding circumstances, having in end the ascertainment of the intention of the parties to the contract; and the character of such relationship is ordinarily a mixed question of law and fact. [16 R. C. L., p. 552, art. 23; 35 C. J., p. 954; Messerly v. Mercer, 45 Mo. App. 327; Mathews et al. v. Livingston et ux. (Conn.), 85 Atl. 529; Stone v. City of Los Angeles, supra; DeWar v. Minnesota Lodge, 155 Minn. 98.]

■ In the case at bar, the character of plaintiff's occupancy and the determination of the relation existing between her and defendant with respect to the premises occupied must be found from and based upon the contract and other facts in the record by which it is interpreted.

That is to say that such are to be determined from the contract itself; the character of the building; the business operated therein; the manner of its operation; the character of the unit occupied, its furnishings and equipment, and the various uses to which it may have been adapted; the character of use to which such unit was devoted by plaintiff; the character of the control over the same by plaintiff and the extent thereof; the supervision and control retained or exercised over the same by the proprietor or owner, if any, or the lack thereof; the transient or permanent character of the occupancy; and any and all other circumstances of whatever nature, including the acts and conduct of the parties thereunder with respect thereto, developed by the evidence.

In the case of Friedman v. Shindler's Prairie House, Inc. et al., 230 N. Y. Supp. 44, l. c. 49, it was held, "Usually, the question as to the character of the relationship between a person who entertains others for compensation, or of the house at which they are entertained, is one of fact. [14 R. C. L. 493.]"

The character of the relationship—whether it be that of lodger, tenant, guest, or otherwise—existing between an occupant of premises and the proprietor thereof is ordinarily a mixed question of law and fact. [16 R. C. L., p. 552, art. 23; Pinkerton v. Woodward, 33 Calif. 557; Howth v. Franklin, 20 Tex. 798.]

In the case of Pettit v. Thomas, 103 Ark. 593, 148 S. W. 501, l. c. 504, where the issue was as to whether a person was a boarder or a guest in an hotel, it is said, "And the question whether one is a boarder or a guest is one of fact, to be determined by the jury under proper instructions from the court."

In the absence of any provision in the contract or of proof of extrinsic circumstances indicating a contrary intention, it will be presumed that it was the intention of the parties to create the relationship of landlord and tenant and not that of lodging-house keeper and lodger. [White v. Maynard, 111 Mass. 250; Swain v. Mizner, 8 Gray 182; Messerly v. Mercer, supra; Oliver v. Moore, 6 N. Y. Supp. 413; Shearman v. Iroquois Hotel & A. Co., 85 N. Y. Supp. 365.]

The defendant contends that there were no extrinsic circumstances in the case sufficient to indicate an intention upon the part of the parties by their contract to create the relationship of lodging-house keeper and lodger, with respect to the premises occupied by plaintiff, or any relationship whatever other than that of landlord and tenant. It may be conceded that there is evidence in the record upon which a reasonable inference may be based to the effect that the plaintiff was a tenant, if it had been so found by the jury. However, where different inferences may arise, they must be determined by the jury. [Powers v. St. Louis Transit Co., supra.] It is necessary therefore, upon the consideration of defendant's complaint, to determine only

whether there is sufficient evidence in the record upon which a reasonable inference may be based to the effect that she was a lodger and not a tenant in order to justify a submission of the evidence of such relationship to the jury and to require its finding thereon.

In a consideration of such question, we are required to accept as true the plaintiff's evidence, with all reasonable inferences to be drawn therefrom. It is contended by plaintiff that there is evidence in the record from which it may be found that the defendant never, at any time, wholly surrendered to her the exclusive possession, use, and control of the apartment in question; that he did, at all times, retain to himself the general possession and control thereof with the right to enter therein, to which her right to the use thereof was subordinated; and that, while she had the exclusive use of such apartment in the sense that she and her family lived therein, the defendant, nevertheless, generally retained the supervisory possession and control thereof.

It is true that there is such evidence; and it is also true that there is evidence from which the contrary could have been found by the jury, had it done so. There is evidence tending to show, upon plaintiff's theory and part, there the defendant as proprietor operated a large hotel known as the "Claremont Hotel," in which plaintiff's apartment was located; that the building in which the hotel was operated was a large, three-story building containing seventy-five units, some of which consisted of one room and some more, among which was the apartment in question; that defendant entertained in such building not only guests of a transient nature but of a somewhat permanent nature; that the defendant as proprietor exercised general control over the entire building, including plaintiff's apartment of which she had only the use; that he or his manager as his representative was in such general control at all times; that the establishment was advertised and known as an hotel and was operated as such; that defendant's manager as his representative lived both day and night in the building; that defendant retained a key to the apartment in question and required plaintiff and her family to leave the key furnished them at his office in the building whenever they departed from their apartment; that such office was at all times in charge of defendant's servants; that the key furnished plaintiff and her daughters was attached to a tag of large and unwieldy proportions, bearing the name "Hotel Claremont;" that defendant had two sets of keys, one set of which always remained in his possession. The front lobby, through which entrance was had to the building, included a hallway or passageway leading to plaintiff's apartment. This lobby was comparable to the ordinary living room the ordinary residence. It was maintained and furnished for the convenience and pleasure of plaintiff and other occupants of the hotel. The de-

fendant maintained an hotel office therein, ordinarily known as the hotel desk, in charge of his employees and representatives. The only proprietary interest in this lobby was in the defendant. He had complete control over the lobby and the egress from and ingress to the building. Defendant furnished the gas, water, light, and telephone service to plaintiff's apartment and was in control of the means by which this service could be cut off from plaintiff's apartment at any time. The evidence disclosed that plaintiff could receive telephone service from and to her apartment only with the consent of defendant and his telephone operators and through them; that electric service, the telephone, the gas, and the water were completely under the control of the defendant and plaintiff had no control whatever thereof; that the defendant owned the silverware and the linens; that, when plaintiff cooked a meal, she used defendant's electric current; that, when she used the telephone, she used defendant's line and defendant's servants; that defendant, as proprietor of the hotel in which plaintiff's apartment was situated, considered himself, under plaintiff's occupancy, obliged to keep her apartment in repair and in habitable shape for use; that he was required to maintain the building generally; that he had a staff of servants for such purpose; that simple repairs were made by help employed in the building but, if complicated repairs were required, outside help was employed; that such repairs were made in the general maintenance of the building and in the general maintenance of the apartments therein for habitable use; that the defendant called his establishment an hotel; that he operated it as such under an hotel keeper's license; that he listed the establishment in the telephone book as an hotel where all could see who had occasion to look it up; that he knew that it was registered in the telephone book as an hotel; that, as landlord, he was obliged to care for the furniture and equipment in plaintiff's apartment; that, when plaintiff was not in the actual possession of her apartment, the defendant had possession of all of the keys thereto and he at all times had possession of one of the keys thereto.

This evidence was sufficient for the submission to the jury of the question of the character of the occupancy by plaintiff of the apartment in question and of whether the relationship between her and defendant was that of landlord and tenant or of lodging-house keeper and lodger. There was ample evidence from which the jury might have drawn the inference that the plaintiff never wholly surrendered the exclusive possession and control of the apartment to her; that he at all times retained to himself the general possession and control of such apartment with the right to enter therein, to which the mere use given her thereof was subordinated; and that he considered the relationship existing as one imposing upon him the duty to repair. No such duty existed if the relationship was that of land-

lord and tenant, in the absence of a contract to repair. No such contract is shown.

One of the various inferences to be drawn therefrom is that defendant, by his retention of one key to the apartment at all times and of the control of the other in plaintiff's absence from the apartment, intended to retain dominion over the apartment and to give plaintiff the use thereof only and not the exclusive possession and control of the same—that defendant's purpose in having duplicate keys and in retaining the actual possession of one of the same at all times and the control of the other some times was that he might assert a right to enter the premises at all times, both when the plaintiff was there and when she was absent. The unwieldy proportions of the key and the tag to which it was attached are suggestive of the idea that it was not intended that the key be carried around but it was intended that it be left by plaintiff at his office, whereby defendant would be in exclusive possession of the apartment or at least would divide control thereof with the plaintiff. The law is, as we have found, that, in order for the relationship of landlord and tenant to arise, the proprietor must surrender and part with the entire possession and control of the premises leased and the right thereto and that the exclusive right to possession and control thereof must pass to the tenant. Otherwise, the occupant is not a tenant but a lodger.

Ordinarily, where the occupant has merely the use, without the actual and exclusive possession and control of the premises in question, which possession and control remain in the proprietor, he is a lodger. To make him a tenant, he must have the exclusive possession and control. [Messerly v. Mercer, supra; Mathews v. Livingston, supra.]

From the facts in evidence tending to show that the entire building was in possession of the defendant and his manager and that such manager resided in the building and was there at all times and that the only entrance to the building was through a lobby where defendant's office was located (the exclusive possession and control of which he had through his manager) and that plaintiff's apartment was reached through a hall or passageway from such lobby, the inference might be drawn that defendant, through his manager, was there for the purpose of controlling and supervising the entire building at all times, including plaintiff's apartment; of supervising and controlling the entrance to the building; of exercising control over who should enter; of supervising the passage and hallways leading from the lobby to the various apartments, including plaintiff's; of exercising control over those who should pass along said halls and passages to enter the various apartments, including plaintiff's. Likewise, the evidence tending to show the control retained by defendant over the electricity, gas, water, light, heat, and telephone service through his

complete control of the means by which such were communicated to and furnished plaintiff in her apartment and by which he could deprive plaintiff and her apartment of such without consulting her or without her consent might give grounds for an inference that defendant had not parted with the entire possession and control of such apartment to the plaintiff but that, upon the other hand, he had retained a measure of control thereof through such instrumentalities and was actually asserting such control.

That the defendant considered himself obliged, under plaintiff's occupancy, to keep the apartment in a reasonable state of repair for plaintiff's habitation and to make repair of furniture and fixtures therein necessarily negatives the idea of the relationship of landlord and tenant. No such obligation is imposed under such relationship in the absence of a contract so to do. [Peter Piper Tailoring Co. v. Dobbin, supra; Mahnken v. Gillespie, supra.] Furthermore, that he considered himself so obliged implied a right of entry reserved by him for such purpose, wholly inconsistent with the relationship of landlord and tenant. It is immaterial that he may never have interferred with plaintiff's possession and entered for such purpose or that, when he did enter, he entered with her consent at times and upon occasions suitable to plaintiff. If he reserved the right to enter for any purpose, it follows that plaintiff did not have the exclusive possession, control, and supervision of her apartment and that defendant had not wholly parted with such possession and control. If such right existed in him, plaintiff's right was, as a matter of fact and law, subordinate to his right; and she could not have been a tenant but could have been a lodger only. [38 C. J., p. 136.]

Moreover, the case at bar presents a personal contract between defendant and plaintiff, to furnish a variety of services which included plaintiff's right to occupancy of an apartment in defendant's building. There was more involved than a mere occupancy of the apartment. All of the fixtures and equipment were owned by the defendant. He owned the silverware and the linens and furnished the gas, the light, the heat, the water, and the telephone lines. When a person thus in the possession of a building lets to another a room or rooms and furnishes to such other the gas, the light, the water, the heat, and the telephone service and maintains in the building a lobby, an office, and a staff of servants to furnish various services to the occupants of the various units and remains personally or through his manager in general possession and control of the entire building, such a relationship may be constituted between such a person and that other as to require the determination of the character thereof to be left to the jury. That is to say that it shall be left to the jury to determine whether the relationship constituted is that of land-

lord and tenant, of lodging-house keeper and lodger, or of hotel keeper and guest.

In Taylor's Landlord and Tenant, Vol. 1, pp. 87 and 88, it is said: "The growing frequency of the occupation of 'flats' or 'suites'—subdivisions of a house or other entire structure—has given rise to many questions in determining whether the occupant is technically a tenant or not; that is, whether he has an interest in the realty, or only a personal contract. While there can be a tenancy of real estate in a single room, or in furnished rooms; yet this can only be created by clear terms of demise."

In the case at bar, there are no clear terms of demise; and the occupancy was of furnished rooms only. If demise there was, such is only one of the inferences that might be drawn from all the facts in evidence.

There was testimony to show a personal relationship between plaintiff and defendant; and, in the character of this relationship, the case was one for the jury. [Carroll v. Cooney, 163 Atl. Rep. 599; Roberts v. Case Hotel Co., 175 N. Y. Supp. 123; Fox v. Windemere Hotel Co., 30 Calif. App. 162, 157 Pac. 820; Messerly v. Mercer, supra; Mathews v. Livingston, supra; Shearman v. Iroquois Hotel & A. Co., supra; Cedar Rapids Inv. Co. v. Commodore Hotel Co. (Iowa.), 218 N. W. 510.]

■ That a contract may be construed according to the interpretation put upon it by the parties is a well-established principle in this State. It might be found from the facts in evidence, based upon defendant's acts and conduct, that he construed his contract with plaintiff to be that she was a lodger and not a tenant. Where a contract in question is indefinite in terms or ambiguous as to reservations of rights thereunder or as to the imposition of duties, the interpretation put upon it by the parties themselves, as shown by their acts and conduct thereunder, may be looked to in determining its meaning. [Clayton v. Wells (Mo.), 26 S. W. (2d) 969; Diehl v. A. P. Green Fire Brick Co., 299 Mo. 641, 253 S. W. 984; Simmons v. Murray, 209 Mo. App. 248, 234 S. W. 1009; Holloway v. Schield, 294 Mo. 512, 243 S. W. 163.]

If the proprietor retains to himself any supervision or control of the premises of one who has taken a room or rooms for hire or if the possession of such a one is anything less than that enjoyed by a tenant or if the relation between the proprietor and such a one possesses features inconsistent with that of landlord and tenant, such a one is a lodger. The control or supervision by the owner is not required to be for any particular purpose or reason. In the case at bar, the defendant testified that, as landlord, he was obliged to care for the furniture and equipment in plaintiff's apartment and to keep such in repair. This being true, he must have had the right to enter plain-

.tiff's apartment for such purpose. That he was permitted to enter therefor on occasions suitable to plaintiff does not alter the proposition. He had duplicate keys to plaintiff's apartment; and, when plaintiff was not in the actual occupancy of her apartment, he had possession of all of the keys thereto.

■ Defendant having the right to enter plaintiff's premises, it was not necessary that he should have exercised such right in order that an inference might be drawn therefrom that plaintiff occupied her rooms as a lodger. The fact that he retained to himself the right to enter for such purpose is sufficient to show that plaintiff did not have the exclusive possession, control, and supervision of her apartment. An actual interference is not required to make plaintiff less than a tenant but a lodger only; it is the right to interfere that has such effect.

■ Other facts than those above noted appear—such as the hotel keeper's license; the billing of the rent; the maintenance of the lobby; the staff of servants employed to service the building; the listing of the building in the telephone book as an hotel; the control over the sources of supply of gas, water, heat, electricity; and the control of the telephone service—all admitting of inferences that plaintiff was a lodger and not a tenant.

■ It is not, however, to be considered that the mere fact that defendant operated the building in question as an hotel or the mere fact that it was advertised and known as an hotel, if such were facts, is conclusive of the character of any particular occupancy therein or necessarily results in the relationship between defendant and plaintiff of inn or hotel keeper and guest, landlord and tenant, or lodging-house keeper and lodger, or in some other relationship; nor is it so considered by us herein. They are to be considered, however, in connection with all other facts and circumstances in evidence as they may tend to negative or support the existence of any particular character of occupancy with the ultimate purpose in view of determining, in connection with all other facts and circumstances, the character of the particular occupancy in question. The same establishment may be operated as an inn, an hotel, a rooming or lodging house, an eating house, and an apartment, as separate institutions or in combination and under the same management. Such operation does not make the occupants of the building of one class—guests, roomers, or tenants. The relationship of the proprietor with some might be that of inn or hotel keeper and guest; with others, that of landlord and tenant; with still others, that of landlord or lodging-house keeper and guest—depending upon the contract with each particular guest and the character of each particular occupancy. [Cedar Rapids Inv. Co. v. Commodore Hotel Co., supra.]

▉ Neither does the fact that plaintiff may have been occupying the apartment in question under conditions of permanency as a home for the time being preclude her from being a lodger. Although she may have been occupying the apartment as a home, under the facts in the record, the jury could have drawn an inference that she was not occupying such apartment as her permanent home but for the time being only. In 32 Cyc. 537, it is said: ''The essential difference between a mere boarder and a guest at an inn lies in the character in which the party comes and remains, that is, whether he is a transient person or not. A person who stops at an inn as a transient is a guest. On the other hand a person who is enjoying accommodations at an inn or hotel under such conditions of permanency as to make the place his home or residence for the time being is not a guest but a boarder, or a lodger if he simply has rooms without meals.''

It has also been held that an oral contract by the keeper of a lodging house to provide one and his family with board and specified rooms for lodging and with heat and light furnished for a period of six months is not a contract by which the relation of landlord and tenant as created but a contract for board and lodging only. [16 R. C. L., pp. 552, 553, art. 23, supra.]

▉ Nor are the mere facts that the charge for the occupancy may be based upon a monthly rate or reckoned for more persons than one or that maid service is or is not furnished conclusive one way or the other as to the character of the occupancy; but such are only matters for consideration in connection with all other facts in the record.

From what has been said, it follows that the trial court properly denied defendant's requested instruction at the close of the whole evidence for a verdict in his behalf.

▉ While defendant assigns error with respect to the failure of the court to give such an instruction at the close of plaintiff's evidence, such assignment does not appear to be insisted upon in the latter part of the brief. However, it may be added that no error was committed by the court with respect to the refusal of such instruction, as defendant thereafter introduced evidence tending to aid plaintiff's case in many respects.

▉ The defendant complains of the action of the trial court in giving instructions Numbers 1 and 2 for plaintiff and in refusing requested instruction C for him.

The defendant complains that there is no evidence upon which to base instruction 1, which permitted recovery by plaintiff on the theory that she was a lodger, if she was so found to be by the jury from the evidence. As already determined herein, in the consideration of defendant's first point, there is ample evidence in the record to authorize such instruction. Defendant's complaint with reference thereto is therefore denied.

■ Likewise, defendant's complaint with reference to the refusal of his requested instruction C is denied. Such instruction was in the nature of a peremptory instruction directing the jury that the relationship existing between plaintiff and defendant was, under the evidence, as a matter of fact and of law, that of landlord and tenant. It appears from what was said in the consideration of the defendant's first point that the question of such relationship was a mixed question of law and fact, to be determined by the jury from the evidence under the instructions of the court.

■ Defendant's complaint with respect to instruction Number 2 for plaintiff must also be denied. Such instruction was as follows:

"The court instructs the jury that whether a person occupying the premises of another is a tenant or a lodger rests in the character of the occupant's possession. A tenant has the exclusive legal possession, supervision and control of the premises occupied by him, but a lodger occupies a portion of a house or building of another, which entire house or building, including that portion occupied by the lodger, is under the supervision and control of the other."

Defendant contends that, by such instruction, the court submitted to the jury for its determination a question of law, in leaving it to the jury to say what constituted "exclusive legal possession."

There is nothing technical about the term. It is one in ordinary use and one having an ordinary meaning. It was used in the instruction in its ordinary sense. Where such is the case, it is not necessary that it be defined. [Cottrill v. Crum, 13 S. W. 753, 100 Mo. 397; Warder v. Henry, 117 Mo. 530, 23 S. W. 776; Porter v. Equitable Life Assur. Soc. (Mo. App.), 71 S. W. (2d) 766.]

Furthermore, it will be noted that the instruction does not purport to direct a verdict. It, at most, purports to be an instruction of definition. Under such circumstances, even if not so complete as it might otherwise have been, unless it be positive misdirection wherein error is apparent, the adverse party, if he desires a more specific and complete instruction, should ask it. [Berryman v. Southern Security Co., 285 Mo. 379, 227 S. W. 96; Browning v. Wabash Western Ry. Co., 124 Mo. 55, 27 S. W. 644; King v. St. Louis, 250 Mo. 501, l. c. 514, 157 S. W. 498; Powell v. Union Pacific R. Co., 255 Mo. 420, l. c. 453, 164 S. W. 628; State ex rel. United Rys. Co. v. Reynolds, 257 Mo. 19, l. c. 30, 165 S. W. 729; Winterman v. United Rys. Co. of St. Louis (Mo. App.), 203 S. W. 486; O'Hara v. Lamb Constr. Co., 200 Mo. App. 292, 206 S. W. 253; Cook v. St. Joseph, 203 Mo. App. 430, 220 S. W. 693.]

There is no apparent misdirection to the jury in the instruction. It properly declared the law. We have examined the many authorities cited by defendant in support of his contention but consider that, under the circumstances of this record, this case is to be controlled

by the principles announced in the authorities just cited. In the case of Christman v. Hickman (Mo. App.), 37 S. W. (2d) 672, in this court where complaint was made of the main instruction as purporting to cover the whole case and directing a verdict, in which the words "unreasonable and excessive punishment" were used without definition, it was held that such failure was not reversible error. Likewise, in the case of Hinson v. Morris (Mo. App.), 298 S. W. 254, one of plaintiff's instructions left to the jury whether the person making the assault therein complained of was the agent of the defendant and used the words "and acting within the scope of his employment and authority." It was held therein that the defendant could not complain because he had not asked a more complete, clear, and specific instruction. Moreover, such case does not appear to have been tried upon the theory that there was any question of the act complained of on the part of the alleged agent being within the scope of his authority. The same may be said here. The defendant did not ask for a more complete, clear, and specific instruction than that complained of; and it does not appear that any contention was made upon the trial that the term "exclusive legal possession," as it related to plaintiff's occupancy, in any way related to the mere right of plaintiff's occupancy without regard to her possession in fact. No such distinction was made upon the trial. It follows that it can not be made here.

    ■ The defendant next complains of the refusal of his instruction L as asked (relating to the credibility of witnesses) and of its giving by the court as modified. The modification complained of consisted of the striking by the court from the instruction as asked of the following paragraph:

"If you believe that any witness has knowingly testified falsely to any material fact, then you are at liberty to disregard and treat as untrue the whole or any part of such witness' testimony."

The trial court cannot be convicted of reversible error in this regard. A trial court has a large measure of discretion as to whether such an instruction should be given in the form requested by the plaintiff. Such an instruction should never be given as a matter of course. There should always be some basis for it when given. It should never be given unless the trial judge strongly suspects from the trial that willful false swearing has been done in the case. [Lloyd v. Meservey et al., 129 Mo. App. 636, 108 S. W. 595; Sampson v. St. Louis-San Francisco Ry. Co., 156 Mo. App. 419, 138 S. W. 98; Farmers' State Bank v. Miller (Mo. App.), 26 S. W. (2d) 863; Oliver v. City of Vandalia (Mo. App.), 28 S. W. (2d) 1044; Milton v. Holtzman (Mo. App.), 216 S. W. 828; Hagen v. Wells (Mo. App.), 277 S. W. 581.]

It is not apparent from the record that the court erred in the modifying of instruction L in the particular noted and in giving it as modified. Complaint is therefore denied.

It follows that the judgment of the trial court should be affirmed, and it is accordingly so ordered. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.