HATTIE WHITE v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant.—149 S. W. (2d) 375.

Division Two, April 3, 1941.

*Charles L. Carr* and *Hogsett, Murray, Trippe, Depping & Houts* for appellant.

*E. E. Thomas, William R. Barnes* and *Thompson & Osborne* for respondent.

WESTHUES, C.—This case was certified to this court because of a division of opinion among the judges of the Kansas City Court of Appeals. [See 140 S. W. (2d) 711.] We adopt the statement of the case as made by the Court of Appeals. It reads as follows:

"This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $800 and defendant has appealed.

"The facts show that plaintiff, a colored woman, was injured by being struck by one of defendant's street cars, about eight A. M. on February 3, 1937. Plaintiff was injured at the point where defendant's double street car tracks, running north and south, intersect the sidewalk on the north side of 63rd Street, an east and west street in Kansas City.

"The evidence shows that defendant's tracks are not laid upon a public street as they approach 63rd Street from the north, but apparently upon a private right of way. Defendant maintains a small building used for a dispatcher's office about 30 feet north of where

plaintiff was struck. Southbound street cars stop at this building for the purpose of permitting the operators thereof to transact business with the dispatcher located there. As a matter of convenience, passengers are taken on and discharged at this point, the premises being paved with asphalt from the building to the sidewalk on 63rd Street.

"Plaintiff was a passenger on a southbound street car which stopped with its front end about opposite the dispatcher's building and which afterwards struck her. Plaintiff alighted from the front end of the car and proceeded on toward 63rd Street, there being a bus standing on the south side thereof, which she intended to board. She walked a little to the west of the west rail of the southbound track, with her back to the car, and when she reached a point about 30 feet south from where she alighted, she was struck. The evidence shows that the car, at any time after it started up, could have been stopped within 2 feet. The car sounded no warning of its approach and plaintiff did not see or hear anything of it after she started away from it.

"According to defendant's evidence the car did not strike plaintiff, but she was injured by reason of falling after she had safely alighted from the car and before it started up.

"The sole point raised on this appeal is the alleged error of the giving of plaintiff's instruction No. One, which reads as follows:

" 'The court instructs the jury if you find and believe from the evidence in this case that defendant owned the street car in question, and same was operated by defendant's employee, in the furtherance of defendant's business, if you so find, and that on or about February 3, 1937, plaintiff alighted from said street car, at the regular stopping point mentioned in evidence, if you so find, and after alighting, plaintiff walked in a southerly direction toward Sixty-third Street, mentioned in evidence, if you so find, and thereafter defendant's operator started said street car in motion, if you so find, and that as plaintiff walked toward the south, she was in a position of imminent peril and danger of being struck by defendant's said street car, if you so find, and that plaintiff was oblivious to such peril and danger, if you so find, and that defendant's operator either saw, or by the exercise of ordinary care, could have seen plaintiff in said position of imminent peril and danger, if you so find, and oblivious thereto, if so, in time thereafter, if so, by the use of the appliances on said street car, and with reasonable safety to himself, defendant's street car, and any passengers thereon, if you so find, to have, by the exercise of ordinary care, either stopped said street car, if so, or sounded an audible warning of the approach thereof, if so, and thereby have prevented plaintiff being injured, if you so find;

" 'And if you further find that defendant's operator failed to exercise ordinary care, and negligently, if so failed to stop said street car, if so, and negligently, if so, failed to sound an audible warning of the approach of said street car, if so, and that as a direct result of

*such negligent failure, if so, to stop said street car, if so, or to sound a warning of its approach, if so, it struck plaintiff, if so, and as a direct result thereof she was injured, if you so find, then your verdict must be for plaintiff* Hattie ·White and against Kansas City Public Service Company, a corporation, and this is true under the above circumstances set forth, if you so find them even though you should find and believe from the evidence plaintiff herself was guilty of negligence at said time and place, which contributed to her injuries, if you so find, in getting into said position of peril and danger, if any, for such contributory negligence, if any, on part of plaintiff, under the above circumstances, if you so find them, would constitute no defense whatever ·in this action.' '' [Italics by the court.]

■ The sole question presented to the Court of Appeals was whether the instruction was broad enough to authorize a verdict for plaintiff on primary negligence. That is also the sole issue here. The part of the instruction italicized gave rise to this controversy. When a case is submitted to a jury under the humanitarian doctrine the plaintiff's instructions must be so worded as to exclude a recovery based on primary negligence. [Mayfield v. Kansas City So. Ry. Co., 337 Mo. 79, 85 S. W. (2d) 116, 1. c. 123 (6-10).] The instructions for the defendant in such a case must not inject contributory negligence as a defense. [Reiling v. Russell, 134 S. W. (2d) 33, 1. c. 38 (11), 345 Mo. 517; Lynch v. Baldwin, 117 S. W. (2d) 273, 1. c. 276 (5, 6).] The rule that plaintiff's instructions, submitting the case under the humanitarian doctrine, must not authorize a verdict on primary negligence is just as important as the rule that the defendant's instructions must not submit contributory negligence as a defense. The primary purpose of instructions is to guide the jury in reaching a just verdict. See 64 C. J. 511, sec. 460, where it is said:

''The office or purpose of instructions is to inform the jury as to the law of the case applicable to the facts in such a manner that the jury may not be misled; in other words, to advise the jury as to what is the law applicable to a certain state of facts if they should find the existence of such facts from the evidence. In more general terms it has been laid down that the purpose of instructions is to aid the jury clearly to comprehend the case and to reach a just conclusion, a right decision, or, as sometimes stated, to arrive at a correct or fair verdict.''

In Willhauck v. Chicago, R. I. & P. Ry. Co., 332 Mo. 1165, 61 S. W. (2d) 336, 1. c. 339 (7, 8), this court said:

''This cause was submitted only on the charge of negligence under the humanitarian rule. Plaintiff's contributory negligence is no defense to such a charge, and when no other ground of negligence is submitted it is not an issue in the case, and we have frequently held that its injection under these circumstances by an instruction such as the above is confusing to the jury and prejudicially erroneous.''

■■ The instruction given in this case was most certainly confus-

ing. It did not definitely require a jury to find, before a verdict for plaintiff was authorized, that the alleged failure to stop the car or warn plaintiff of its approach, as hypothesized in the second paragraph of the instruction, had reference to a time after the alleged peril of plaintiff arose. That of course is the very basis upon which a recovery may be had under the humanitarian doctrine. [State ex rel. Fleming v. Bland, 322 Mo. 565, 15 S. W. (2d) 798, l. c. 800, 801.] The instruction, as written, may have been understood by a jury as authorizing a verdict for plaintiff on primary negligence. That is, negligence in failing to give a warning signal at or prior to the time when the street car was set in motion. Plaintiff certainly was not in imminent danger during all of the time she walked south after alighting from the car. Not even all of the time after the car was set in motion. The car could have been stopped within two feet. Plaintiff could have taken one step westward out of danger. In connection with the instruction consider plaintiff's evidence:

"Q. Now these street cars make a noise don't they when they start up? A. He didn't make no noise when he started that morning."

Note that the second paragraph of the instruction authorized a verdict if the defendant ". . . negligently failed to sound an audible warning of the approach of said street car, . . ." The judges of the Court of Appeals were in agreement on the law. They differed as to the meaning conveyed by the instruction. The majority opinion found fault with it, but did not deem it bad enough to require a reversal of the case. The dissenting opinion pointed out its ambiguity. We think the instruction violated the rule stated in Mayfield v. Kansas City So. Ry. Co., 337 Mo. 79, 85 S. W. (2d) 116, l. c. 123 (6-10), where this court said:

"It is prejudicial error, in an instruction submitting humanitarian negligence, to inject therein primary negligence of the defendant or contributory negligence of the plaintiff; to require consideration of any antecedent negligence of either plaintiff or defendant which existed prior to the time that the humanitarian doctrine properly commenced to operate; or to predicate recovery upon any different facts than those which actually existed at the time the peril arose and was discovered, or, if there was a duty to keep a lookout, when it was discoverable by the exercise of the required degree of care."

The jury in this instance may well have based its verdict on the failure of the motorman to give a warning at the time the street car was set in motion, even though it believed plaintiff was negligent in walking in such close proximity to the tracks as to be in danger of being struck by a passing car. The instruction is therefore erroneous.

We desire to take this opportunity to criticize a practice which seems to be growing, that is, the so frequent use in instructions of such phrases as, "if so," "if you so find" and "if any." The instruction

under consideration, if we have counted correctly, repeats such phrases twenty-seven times. Such frequent use of those terms is not necessary and tends only to confuse. The practice should be discontinued.

The judgment is reversed and the cause remanded. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.