JANE MARTIN, RESPONDENT, v. SHRYOCK REALTY COMPANY, A CORPORATION, AND PRUDENTIAL INSURANCE COMPANY OF AMERICA, A CORPORATION, APPELLANTS.—163 S. W. (2d) 804.

Kansas City Court of Appeals. June 15, 1942.

Rehearing denied July 6, 1942.

*L. C. Harper* for respondent.

*Ryland, Stinson, Mag & Thomson, Wright Conrad* and *Lawrence R. Brown* for appellants.

BOYER, C.—Plaintiff and two daughters were occupants of a kitchenette apartment in a building known as the Sterling Apartment Hotel located at the northwest corner of 29th Street and Forest Avenue in Kansas City, Missouri, bearing street number 2840 Forest. On December 2, 1939, plaintiff fell in the bathroom of said apartment and sustained severe injuries. She sued both defendants for damages, alleging that the insurance company owned the building "and at all times herein involved, it kept, maintained, operated and controlled said hotel by and through its co-defendant, Shryock Realty Company." The apartment and the services rendered the occupants were described, and it was alleged that the defendants retained to themselves the general supervisory control and possession of said hotel, including the apartment occupied by plaintiff; that all utilities and hotel services so provided were under the control and direction of defendants and were paid for by the rental charge for the apartment; "that by reason of the relationship of hotel keeper and guest or lodger, existing between defendants and plaintiff, they owed to her the duty to maintain and keep said hotel, and particularly the part thereof

occupied by her, in a condition free from unsafe hazards as hereinafter set out." It is next alleged "that the bathroom floor level was slightly higher than said hallway floor level, making a perpendicular offset of such height as to constitute a stumbling hazard at the entrance of said bathroom, which offset was poorly lighted; that defendants failed to guard and protect said stumbling hazard by a gradually inclined threshold, or otherwise; that inside of said bathroom in close proximity to said stumbling hazard, defendant kept and maintained a plumbing cleanout, consisting of a pipe protruding upward through the floor with a cap held in place by a large metal tap of sharp corners and edges so protruding above the floor level, and so placed and unguarded as to render the use of the bathroom unsafe, especially in connection with said doorway stumbling hazard; that although said unsafe and hazardous conditions were well known to defendants, they continued to maintain same without remedy or relief from such conditions, therein failing to keep said hotel building and premises in a condition reasonably safe for the use of its guests and lodgers, including plaintiff." It was further alleged that through the negligent and unsafe construction and maintenance, and poorly lighted and unguarded condition, plaintiff was caused to stumble on the bathroom entrance way and to fall, striking her right knee on the metal cleanout cap, and as a direct and proximate result of the negligence and carelessness charged and every item and element thereof acting severally and conjunctively, plaintiff was injured as further described.

The defendants answered separately with a general denial and a plea of contributory negligence.

The defendants offered no evidence except a rental agreement which was identified and read to the jury in connection with the cross examination of one of plaintiff's witnesses. At the close of all the evidence the defendants separately requested peremptory instructions to the jury to find for them. These were refused and the case was submitted to the jury under instructions offered by plaintiff and authorizing recovery upon a finding that plaintiff's occupancy was that of a lodger and not as a tenant as the terms were defined, and upon a finding that the apartment so occupied was not in a reasonably safe condition by reason of the offset in the floor levels between the hallway and bathroom, or an improperly located or protruding plumbing trap, and that plaintiff was injured by reason thereof. Instructions were allowed in behalf of defendants to the effect that their duty was limited to the exercise of ordinary care to have the premises in a reasonably safe condition; that the burden of proof was on plaintiff to prove that the entrance to the bathroom was not reasonably safe, and upon a failure to do so the verdict should be for defendants. The jury was also instructed upon the issue of contributory negligence.

The verdict was for the plaintiff in the sum of $7500 against both

defendants, and judgment was rendered accordingly. After separate motions for new trial and in arrest of judgment were overruled an appeal was allowed and duly perfected.

The errors assigned pertain to the ruling of the court upon the separate demurrers of the defendants, and to alleged unauthorized instructions. It is contended that the demurrers should have been sustained because under the evidence plaintiff was a tenant and not a lodger; that defendants were not liable for any open and obvious defect known to the plaintiff; that regardless of the status of plaintiff and the relationship existing between her and defendants, the defendants were not negligent; and that plaintiff was guilty of contributory negligence as a matter of law.

Respondent's position is in support of the theory upon which the case was submitted to the jury, and respondent contends that under the proof made it was for the jury to determine from all the evidence whether the relationship was that of landlord and tenant, or that of hotel keeper or operator and lodger, and that there was ample evidence to justify the finding of the jury.

It is manifest that the relationship existing between plaintiff and defendants at the time of her injury is of first importance. Relative to that the big question is whether the proof was sufficient to authorize the jury to determine that relationship and the status of plaintiff as a question of fact. The answer must be found in the record and in applicable rules of law. There is evidence of the following:

Plaintiff and two daughters, Mary and Naomi, lived together in Kansas City and occupied an apartment at 616 East 36th Street; they desired a change and on November 17, 1935, Mary Martin made application at the office of the Sterling Apartment Hotel and engaged apartment No. 119. The application, and an agreement signed by her at that time on a printed form, bears the following information and notations:

### "SHRYOCK REALTY COMPANY

111 West 10th Street            Phone Harrison 1430
Application for Rental Unit

Name   Mary Martin                    Date 11-17
Moving from    616 E. 36      How long there    6 months
Present Landlord's Name          Pearl Carroll
Address     616 E 36th     Phone     We 4573
Employed by (firm)    W. B. Young Supply Co.
Address     208 Del.     Phone     Vic 0808

FAMILY CONSISTS OF:
    3      adults
CHARGE ACCOUNTS:
1.     None
BANK ACCOUNT AT         Postal Savings

"AGREEMENT

"Tenant agrees to give one month's notice in writing from next rent-paying date, should tenant desire to vacate the apartment. (The law requires this notice, and it is the only way to end tenant's liability for rent.) Rent date is determined by date rent starts or tenancy begins. If tenant is allowed to pay on any other day in the month, either semi-monthly or otherwise, it is agreed this is only for tenant's convenience and does not change tenant's liability to give notice from rent date established where tenancy begins. Tenant further agrees to return the apartment with the furnishings and fixtures in as good condition as at present, ordinary wear and tear excepted. The Shryock Realty Company will be in no way responsible for any property belonging to tenant that may be placed in the demised premises, or in the locker room. Tenant accepts this agreement subject to rules and regulations stipulated by this company.

"ACCEPTED:
"Mary Martin
"Tenant's Signature
"C. Sheeks
"Shryock Realty Co."

At the right-hand side of the page the following notation appears: "Mary Martin, 2840 Forest, Apt. 119, $35.00." On the back of this page are notations on a printed form under the heading "NOTICE OF APARTMENT RENTED" showing the address 2840 Forest, Sterling Apt. No. 119, Rate $35.00; kind of tenancy as that of month to month, indicated by a check mark; that the rate included gas, lights, electric refrigeration, maid service weekly, and rent to be paid to the resident manager, all indicated by check marks; and the further notation that the apartment was rented by resident manager, with the signature, Nora E. McElvain. Following this, under the captions "Credit Dept." and "Rental Sales Dept." and shown "O. K. Ken D."

Pursuant to negotiations conducted by Mary Martin with the assistant manager, plaintiff and her daughters moved in and occupied apartment No. 119 and remained there until the following June or July. Apartment No. 119 was accessible from the main lobby and halls of the building. For the rental agreed to be paid the occupants were furnished heat, and all the utilities, with limited telephone accommodation; maid service once a week, and more often if they wished to pay for it; incoming telephone service was furnished from the switchboard in the lobby; outgoing calls were required to be paid for; the maid had a pass key and so did the house boy or janitor who removed garbage and trash. The occupants had a pigeon hole box in the lobby where their mail was placed and where they

could leave their keys if they so desired; they all had ordinary pass keys without tags attached to them. The maid or house boy did not enter the apartment without knocking and did not enter unless the occupants wished them to; packages or articles sent in for occupants would be received at the office in the lobby; articles of clothing sent out for cleaning purposes would be received and paid for and the charge put on the bill of the occupants. The monthly rent was paid in two installments. Apartment No. 119 was located on what was known as the first floor.

In June or July of 1936, plaintiff and daughters moved from apartment No. 119 to another apartment located on what was called the ground floor bearing number 1110. This apartment was on the southwest corner of the ground floor with an outside entrance from 29th Street. It was not accessible in any other way; there was no connection between it and the interior halls or lobby of the building. To reach the lobby it was necessary to go outside and walk almost half a block, or go around to the rear of the building and up the back stairs. The location is in the 1110 block on 29th Street, although the occupants of the apartment stated that it was apartment No. 1110, and not 1110 East 29th Street. This apartment consisted of a living room, dinette, kitchen, hall and bathroom. It was furnished by the owner with a stove, refrigerator, in-a-door bed, and curtains. The occupants supplied their own linens, towels, pillow cases, sheets, blankets, dishes, silverware, cooking utensils, and furniture. They received a reduction in rent. The apartment was their home; they had no other home. They had groceries delivered to the apartment, and cooked their own means. There was no restaurant in the building.

Mary Martin testified that when they moved to the ground floor apartment they were to receive the same service as they had received upstairs, and they were privileged to use the porch and lobby; that the utilities were furnished through the building meters; that there was nothing said about any difference in the character of occupancy; and that it was under the same agreement she had made for apartment No. 119. She and her sister, Naomi Martin, testified in detail as to the nature and character of service and accommodations extended to them while occupying the apartment, which is the same or similar to that above recited, and included window cleaning and the cleaning of curtains and drapes, vacuum cleaner service on certain days, and the maintenance of stove and refrigerator when needed; that there was a resident manager and assistant manager who would look after complainants about the janitor or maid service or disturbances in other apartments; that they maintained 2840 Forest as their mailing address and did not receive mail at apartment No. 1110; that their mail would be placed in their box at the desk; the telephone operator upon request, would give them morning calls. Plaintiff and her

daughters lived in apartment No. 1110 from June or July, 1936, until January, 1940.

Exhibits and other evidence show that the building in question is of large proportions, consisting of three main floors above the ground floor; that it bears the name "Sterling Apartment Hotel;" that it is owned by the Prudential Insurance Company of America; that the Shryock Realty Company operates it for the owner; and that a property inspector for the insurance company lives there. The telephone directory of Kansas City of June, 1939, lists the Sterling Apartment Hotel, 2840 Forest, Va. 3750. In the classified section under "apartments furnished" is the same listing. It is not listed under the classification of hotels.

In reference to the defects and dangers in the apartment complained of, different witnesses testified that at the entrance to the bathroom the floor was approximately one inch higher than the hall floor. An independent building maintenance man testified that he had examined the premises and that the bathroom floor "right at the door it sets up three-quarters of an inch on the lock side, and three-eighths of an inch on the inside of the door, this side (indicating)." That it created a perpendicular offset; there was nothing adjoining it; that the usual or standard way of controlling a situation like that would be to install a ramp or some other method of treatment to remove the offset. He also testified in reference to the plumbing cleanout trap; that it was located 20½ inches from the bathroom entrance next to the wall and extended into the bathroom one and three-quarter inches; that the cap of it set up one inch above the tile floor, and a stud bolt one-half inch above that in the center; that it was a cleanout trap for the kitchen sink on the other side of the wall; that it was partly under the partition; that its proper location would be in the kitchen; that such traps in a bathroom are generally put behind the fixtures out of the way.

Plaintiff corroborated the testimony of her daughters and described the manner in which she received her injury on December 2, 1939. She said that she started to the bathroom; that her toe caught on the offset and she was thrown down; that she tried to avoid striking the bath tub which was in front of her, and her knee struck the plumbing cleanout trap; she felt the bone crack. Her injury, suffering, and hospital experiences were described. On cross examination she stated that she had lived in the apartment since July, 1936, or approximately three and one-half years, except four months when she was visiting in California; that the bathroom arrangement all remained the same during that time; that she entered the bathroom on an average of three or four times a day, maybe oftener; that she was thoroughly familiar with all the surroundings; that she was always careful on that step and felt like it was dangerous; she had never had any trouble before and never tripped; she was conscious

of the offset and knew it was there; that she saw it there. "Sure, it was there—I knew it was there. . . . For some reason my toe caught—I don't think anybody could tell how."

Frank Barry was a janitor employed by the realty company and worked at the Sterling Apartment Hotel. He testified that his service continued until December, 1939, and that he was no longer employed there. He described the service that he rendered to the apartment occupied by plaintiff in removing garbage as being similar to the service that he rendered other apartments; that he had a pass key and if the garbage was not set outside he would go in and get it, but would knock on the door before doing so and if the occupants were there and told him it was all right, he would go in and get it; otherwise they would set it outside the door. If anyone was there he would not go in unless told to do so, and he did not think that anyone else around the hotel would enter without permission. He also described the offset in the floor of the bathroom and the plumbing cleanout trap, and said that he had cleaned the trap and that it served the kitchen sink.

It is neither feasible nor essential to state every detail of the testimony relative to all the issues. After careful examination of the abstract the foregoing statement is adequately specific and sufficiently comprehensive to include the substance of all the evidence that could have any material bearing upon the question of the relationship created and existing between the parties.

The petition and the recovery instruction in this case are bottomed on the theory that plaintiff was a guest or lodger in the apartment hotel and was not a tenant. If plaintiff's occupancy of the apartment was shown by her evidence to have been that of a tenant, the demurrers of the defendants should have been sustained. A landlord is not liable to the tenant or to the guests of a tenant because of defects in the rented premises, and he has no duty to repair or keep the premises in safe condition in the absence of an agreement to that effect. [Mahnken v. Gillespie, 329 Mo. 51, 61, 43 S. W. (2d) 797.]

One of respondent's points presents the claim that defendants waived the demurrers by joining in submission of the case by instructions offered and given in their behalf. This claim is based on the proposition that the petition contained three different charges of negligence; that there were no withdrawal instructions requested on the issue of the two charges submitted to the jury; and that the demurrers were general. Reliance is placed upon a rule previously announced by the Supreme Court and followed by this court in Kirkpatrick v. American Creosoting Co., 37 S. W. (2d) 996. This court, *ex necessitate legis,* followed the prevailing rule at that time as announced in Torrance v. Pryor (Mo. Sup.), 210 S. W. 430, and numerous other cases. The Supreme Court has overruled the Torrance case and other cases following it on the point in question and now holds "that a general demurrer to the evidence challenges the sufficiency

of the evidence on every theory of liability alleged in the petition, including the specifications on which plaintiff elects to stand; and that on the overruling of his demurrer the demurrant does not waive his point by submitting converse instructions on the issue submitted because he is forced to adopt that course by the adverse ruling on the demurrer.'' [Klotsch v. P. F. Collier & Son Corporation, 159 S. W. (2d) 589, 595, and cases cited.] Appellants have not waived their right to question the ruling of the court on their demurrers to the evidence.

The decisive question in this case is whether or not the jury under the evidence should have been permitted to determine the question of the relationship between the parties, and to find that plaintiff was a lodger in the hotel and not a tenant in the apartment. Examination of the numerous authorities cited by both parties, and other research, leads to the conclusion that there was no substantial evidence in this case to support plaintiff's theory; that the case was improperly submitted, and the finding of the jury was unauthorized. The demurrers should have been sustained.

Respondent contends that the decision of this court in the case of Marden v. Radford, 84 S. W. (2d) 947, 229 Mo. App. 789, fully sustains the theory of plaintiff in this case, and seeks to draw a parallel of issues and facts between the two cases without material variation. What was said and ruled in the Marden case must be read and interpreted in the light of all the facts and circumstances there presented. The reasons why the character of the occupany in that case was held to be a jury question are fully set forth. The state of the evidence was such as to justify different inferences as to the intention of the parties and the character of relationship actually created. Many distinguishing features are revealed, and there is a marked difference in the proof relative to the business in which the defendant was engaged; the kind of establishment he was operating; the nature and character of the agreement between the parties; the supervision and control exercised by defendant; and various other subjects, all of material weight. Some of the notable features of that case which are not present in the instant case are these: The defendant was a licensed hotel operator; he called his establishment the Hotel Claremont; it was listed in the telephone directory under the classification of hotels; he accommodated transient guests the same as any other hotel; his building also contained kitchenette apartments; plaintiff orally engaged a one-room kitchenette, completely furnished and provided with bed linen, carpets, dishes, table linen, silverware, and other articles; there was complete telephone service; the kitchenette was accessible only through the lobby and hallways of the hotel, over which the defendant had complete control and exercised full authority over ingress and egress to the apartment; regulation hotel keys were provided with large cardboard tags bearing

the number of the apartment and the name of the hotel; the keys were required to be left at the desk in the office when the occupants were out, and this was done; the defendant admitted his obligation to make repairs in the apartment; there was very little said when the apartment was engaged, and there was no written contract. All of the foregoing features are absent in the case at hand.

These matters, as well as the evidence in the present case which further distinguishes it from the Marden case, render wholly untenable any claim of a parallel or even a similitude of all the material facts in the two cases. When the agreement of parties is oral and a contest arises as to what their actual agreement was resort may be had to all the extrinsic facts and circumstances that have a bearing upon the character of the occupancy which the parties intended to and did create. Such was the situation in the Marden case. In the case now under consideration there was in the beginning a written agreement clearly indicating the character of the occupancy which was engaged as a month to month tenancy. When there was a change in locality from one apartment to the other, the member of the family who negotiated the agreement testified that there was nothing said about any difference in the character of the occupancy; that it was under the same agreement she had made for the apartment first engaged; but there was a reduction in rent on account of the occupants providing some of their own furniture and household equipment. There is no evidence that the owner and operator of the building reserved any right of possession or control of the apartment occupied. The accommodations provided for the occupants were subject to their own volition. No one had any right to enter the apartment without leave or consent of the occupants. There was no legal right of access and control on the part of the owner or operator. The possession and use of the apartment was exclusive and complete on the part of the occupants. There was no dominion claimed or exercised by the owner or operator and there was no legal right to assert it. Other facts in the case negative the idea that plaintiff was a guest or lodger. She was occupying separate quarters with a private, outside entrance upon the street with no interior means of ingress or egress. The apartment was furnished in the main by the occupants who made it their home for three and one-half years, and they had no other home. The evidence established the fact that plaintiff was a tenant and not a lodger, and there was no evidence of any substance that would justify an inference or finding to the contrary. The contract and understanding of the parties created the relationship of landlord and tenant, and not that of hotel keeper and guest or lodger. No mutual intention to the contrary is evidence by any of the extrinsic facts or circumstances.

The authorities reviewed in the Marden case are referred to in the briefs of counsel for both parties. The chief distinction between a

tenant and a lodger is indicated as resting in the character of the possession. Many other subjects are discussed and many authorities· reviewed. Both parties rely upon the law as declared in that case in many respects, and it is not deemed necessary or appropriate to review the case law or make reference to authorities stating fundamental principles and the rules under which a case is rendered submissible to a jury. The impressions of this case are so strongly contrary to the theory of plaintiff that a court must be constrained to rule that a jury should not be permitted to make inferences and findings entirely contrary to the evidence, and when there is no evidence reasonably justifying a difference of opinion on the issue determined. Solicitude for plaintiff's injury and grave misfortune is natural and right, but a pecuniary solatium can be required only when the law permits it. Human sympathy is a precious faculty, but it cannot be made the basis for a money judgment contrary to legal inhibitions. In view of the conclusion reached on the phase of the case considered above other assigned errors do not require attention. The judgment in this case should be reversed. The Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is reversed. All concur.