**Anthony B. WOOD, Plaintiff-Appellant,**

v.

**Shirley Ann EZELL (Johnson), Defendant-Respondent.**

No. 7881.

Springfield Court of Appeals.

Missouri.

Jan. 23, 1961.

Hyde & Purcell, Poplar Bluff, for plaintiff-appellant.

Bloodworth & Bloodworth, Poplar Bluff, for defendant-respondent.

RUARK, Judge.

A Fourth of July vacation collision tragedy has reached this court in the form of an appeal by the plaintiff from a verdict of $15,000 rendered on defendant's humanitarian negligence counterclaim.

The head-on collision occurred on Highway 67 in Butler County at a place where the 22-foot two-lane highway runs straight and level for several miles between gravel or all-weather shoulders some 10–12 feet in width. It was in the middle of a clear day and the concrete was dry, although the shoulders were damp. The collision occurred approximately in front of an establishment belonging to one Connie Creach, who there had his home, garage, junk yard, and car lot. His place of business had two driveways. Across the road on the east was another business place with a driveway. Plaintiff-appellant Wood was driving south in his 1957 DeSoto, in good condition and with good brakes. He said he was going 60 mph (the only stopping distance proved). With him in the car were his wife and three children, ages five, ten, and twelve. In the front seat beside him was his wife and between them one child. In the back seat the other two children were asleep. His lane in front (the west one) was open, but some cars, two or more, were coming up from the south meeting him, but in the opposite lane.

Defendant-respondent Ezell (since married and now Johnson) was driving a smaller English-made car called a Prefect. Beside her was a friend, one Lambing, owner of the Prefect, who died in the crash. The Prefect "came up from behind" the two or more cars, which were slowing down somewhere along in front of the Creach place. She (defendant, driver of the Prefect) pulled out to her left, in the west lane and in the path of plaintiff's car. Plaintiff was then, according to defendant's evidence, which we must take, "approximately around" 200 yards to the north. The Prefect, at some point of time we do not have, started angling toward the shoulder on its left. The DeSoto, also at some point we do not know exactly, applied its brakes and also angled to the shoulder on its right. The cars met about half on and half off the pavement. The front of the DeSoto took most of the force, and the right front corner of the Prefect apparently was the approximate point of its impact. Such was the force of the impact that the

cars ended up on the shoulder back south some 61 to 64 feet in the direction from which the Prefect was coming. The De-Soto left skid marks angling from the place of impact back to the north some 41 feet.

Plaintiff-appellant Wood and his wife were witnesses. Defendant testified that because of shock or injuries she had no memory of the occurrence, and her case depends largely upon the testimony of the witness Creach.

As to pleadings: Plaintiff-appellant plead-ed and submitted primary negligence in crossing to and driving on the left side. Defendant-respondent, in her counterclaim, pleaded that the collision was caused by plaintiff's negligence in several respects, including failure to drive at a rate of speed which was prudent under the circumstanc-es, and humanitarian negligence in failure to stop or slacken speed. She submitted her counterclaim on humanitarian negli-gence, however, in failure to stop and slack-en speed, in the conjunctive.

■ It is contended that the testimony of the witness Creach has no probative value in respect to speed, slackening of speed, and distance because (a) it was con-tradictory and the contradiction was unex-plained and (b) it was contrary to the physi-cal facts.

The witness was standing in front of his garage and near his south driveway. The Prefect (the car driven by defendant-re-spondent Johnson) came up the road as the two cars (in front of it) were slowing down. It pulled out into the west (its left) lane, presumably to pass. The witness saw the plaintiff-appellant's DeSoto coming south on its own west lane. When the Prefect pulled out, the DeSoto was distant —"*At the present time* I couldn't have told exactly, but afterwards why I did walk it you know, and stepped it to be for sure. It was approximately around two hundred yards." The Prefect "apparently went to the [west] shoulder" and its left side was off the concrete and onto the shoulder about five feet at an angle when the collision oc-curred. The oncoming DeSoto was travel-ing "my estimation was seventy to eighty miles an hour." On cross-examination the witness, in identifying a picture (showing the area), testified that *"right at that pres-ent* there was cars and things on there." He said again that when the Prefect swerv-ed out of its lane the DeSoto was *approxi-mately* 200 yards up the road. The wit-ness admitted that he had been interviewed by plaintiff's counsel some eight days after the occurrence.

"Q. Now, do you remember I said, about your upper driveway, and you said yes, I would say between two hun-dred and fifty and three hundred—I never did actually go out and step that or nothing, feet, do you remember me asking you that? A. I don't remem-ber saying feet."

Then later:

"Q. At that time it was true? A. Yes, sir."

He then stated that the Prefect traveled, from the time it pulled out until the col-lision, 50 feet and that his estimate of the speed was 15 or 20 mph; that he was stand-ing there "looking at it, and the other one, glancing backwards and forwards."

He said he did not recall telling plaintiff's counsel (in that previous statement) that he did not get any impression as to how fast the DeSoto was going but he wouldn't say he didn't say it. "If I told you, I said it."

"Q. It was true? A. If it is on there it is true."

The witness repeated that he did not re-member making the statement, but

"Q. Well, if you did tell me that, was it true then? A. Yes, sir, it could have been true.

"Q. And therefore it must be true now. A. Must be true now."

He further stated that although he did not observe that the DeSoto slackened its speed,

he was not saying that it didn't slacken. And as a matter of fact he said he saw the skid marks which it had made; that he couldn't watch both cars at the same time; that when the Prefect cut out, "why I saw this other car coming in the distance, and then I just held myself * * * I thought, I hope it makes it, and it didn't."

█ Plaintiff invokes the rule that contradictory statements of a witness which are unexplained have no probative value because it is speculative as to which is true.[1] The testimony of the witness is not contradictory because he said he didn't *notice* the DeSoto slow down or slacken speed, although at the same time he admitted that it left skid tracks. He was dividing his attention between two cars in an occurrence which covered a short period of time in which he was straining ("I hope it makes it") for the Prefect to get on the shoulder. Under such circumstances it was not unbelievable that he did not notice any slackening. In quick-moving and exciting events, even such as, for instance, horse racing, it often seems to the urging spectator that one particular horse is barely moving while another moves up with lightning speed. However, the evidence, standing by itself, that he didn't "notice" the DeSoto slowed its speed has little probative value, but it is not contradictory.

As to whether the witness told plaintiff's counsel in an out-of-court statement that the DeSoto was 200 *feet* (instead of yards) up the road:

█ Of course, previous out-of-court statements would not destroy the probative value of the witness's sworn evidence, al-though it might affect his credibility.[2] In this respect, however, the witness had a ready explanation in that (so he said) he had not stepped the distance at the time of his alleged out-of-court statement. Afterwards he did step it. His statement in, response to several questions to the effect that "if it is on there it is true" we think is, or could at least be interpreted to mean, that if it is written there (which he did not admit), then he said it, rather than an adoption of a statement of facts contrary to what he testified.

█ The statement that the DeSoto traveled 200 yards (600 feet) at a speed of 70–80 mph while the Prefect traveled 50 feet at 15–20 mph is obviously unbelievable in respect to the comparative speeds and distances traveled by the two cars and approaches upon the rule which requires the rejection of testimony which is contrary to known and accepted physical laws.[3] But it must be remembered that the witness's ideas were only estimates of speed and distance formed in the time of stress. Also to be borne in mind is that in some instances his testimony was tempered by the qualification of "approximately around two hundred yards." The distance the Ford Prefect traveled was necessarily an estimate and an approximation, and in this respect it is to be noted that there is no fixed point to mark the place where it can be said that the car "pulled out" of its lane into the other. Although we agree with appellant's contention that estimates can become so, completely far-fetched as to deny their validity even as estimates, the general rule is that courts do not hold the parties or the witnesses too closely to estimates of speed, distances or time in an emergency

1. Stephens v. Thompson, Mo., 293 S.W. 2d 392; Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644; Pritt v. Terminal R. R. Ass'n of St. Louis, 359 Mo. 896, 224 S.W.2d 119; see Thomas v. Aines Farm Dairy, Mo.App., 257 S.W.2d 228, 235.

2. Miller v. Multiplex Faucet Co., Mo., 315 S.W.2d 224, 227; Hampton v. Raines, Mo.App., 334 S.W.2d 372, 377.

3. See Kelly v. Terminal R. R. Co., Mo., 315 S.W.2d 699, 702; East v. McMenamy, Mo., 266 S.W.2d 728, 731; Lohmann v. Wabash R. Co., 364 Mo. 910, 269 S.W. 2d 885(4).

situation.[4] The fact that the witness used the word "approximately" does not deprive his evidence of substantiality.[5] The jury was not bound to believe the witness's testimony as to the speed of *either* car, and it must be remembered that the stopping distance was based on plaintiff's admitted speed, and that the *place* where plaintiff's car was on the road at the time defendant "pulled out" was located in reference to the witness's upper driveway. We are of the opinion that the testimony of Creach was for the jury's consideration.

■■ The testimony of Sergeant Montgomery of the Highway Patrol in regard to stopping distance is attacked as to both admissibility and probative value, the principal criticism being it did not take into account the safety of the occupants of the DeSoto. On direct examination the witness qualified himself as having attended classes where stopping distance was studied and by participation in test and experiments (explaining the methods) with various makes of cars, which included Dodges, Pontiacs, Buicks, and Chevrolets, but not DeSotos. He testified that Dodge and Pontiac were in the same weight and "approximate class" with the DeSoto. The court did not permit him to answer whether DeSoto and Dodge were made by the same company. He testified that a car traveling 60 mph travels 88-plus feet per second and that a car "like Mr. Wood's 1957 DeSoto" with good brakes and under similar conditions would require for stopping distance at that speed, braking distance 185 feet; average reaction time of ¾ second, 66 feet; total stopping distance, 251 feet. The witness explained that the tests were usually made with two patrolmen in the car. On cross-examination his testimony clearly showed that in giving his conclusions as to braking distance he considered the occupants of the car in respect to effect on weight but that he gave no special consideration to the fact that there were the wife and small children in the car. Although the appellant made many objections to the competency of the testimony, none of his objections was based upon the safety-to-occupants factor; and after it appeared from cross-examination that no additional consideration was given to this by the witness, there was no motion to strike his testimony on this account.[6]

We are of the opinion that the witness was qualified and that his evidence was competent to prove the expected stopping distance of an automobile of the same class, in the same approximate condition, and under the same road conditions as were involved in this case, just as the performance of a certain type of machinery under certain conditions can become the subject of expert testimony.[7] Stopping distances, except only in a general way, are not subjects of general knowledge, and one of the tests for admission of expert testimony is whether the court or jury will be aided.[8]

4. Caffey v. St. Louis-San Francisco Ry. Co., Mo.App., 292 S.W.2d 611, 617; Burris v. Kansas City Public Service Co., Mo.App., 226 S.W.2d 743, 747; Pettyjohn v. Kansas City Public Service Co., Mo.App., 203 S.W.2d 616; see Long v. Mild, 347 Mo. 1002, 149 S.W.2d 853.

5. Fitzgerald v. Thompson, 238 Mo.App. 546, 184 S.W.2d 198, 205; see Leathers v. Sikeston Coca-Cola Bottling Co., Mo. App., 286 S.W.2d 393.

6. See Tucker v. Carter, Mo.App., 211 S.W. 138; Teters v. Kansas City Public Service Co., Mo., 300 S.W.2d 511, 514.

7. Blashfield, Cyclopedia of Automobile Law and Practice, vol. 9C, § 6237, p. 412; 20

Am.Jur., Evidence, § 812, p. 682; 32 C.J.S. Evidence § 533b, p. 236; Baker v. Kansas City Public Service Co., 353 Mo. 625, 183 S.W.2d 873; Brockman v. Robinson, Mo.App., 48 S.W.2d 128; Anderson v. St. Louis-San Francisco R. Co., Mo.App., 63 S.W.2d 182; Neely v. Chicago Great Western R. Co., Mo.App., 14 S.W.2d 972, 977; Harrison v. St. Louis-San Francisco R. Co., 339 Mo. 821, 99 S.W.2d 841, 843; Young v. Wheelock, 333 Mo. 992, 64 S.W.2d 950, 957.

8. Homan v. Missouri Pac. R. Co., 334 Mo. 61, 64 S.W.2d 617, 625; Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 248.

■ But in order to make respondent's humanitarian case there must be evidence from which it could be found or inferred *not only* that the DeSoto could be stopped or slowed in time to avoid the collision, but the further fact that such could be done with safety to the occupants of the car. This is a constitutive element of humanitarian negligence,[9] for one is not charged with the duty of endangering his loved ones in an effort to save the one who created the dangerous situation.

We believe that the bare question and answer in regard to stopping distance (unless otherwise indicated) *implies* that the car can be stopped under normal conditions with reasonable safety to the driver.[10] Of course, a car might be "stopped" by running into a deep ditch, possibly by overturning, but the question as normally put, and as here used, presupposes that the car is not going to be overturned, nor is the driver to be put through the windshield or otherwise injured.

Here, however, the DeSoto carried a precious cargo of two sleeping children on the back seat and a young child in the front. The driver was entitled to use such reserve and moderation in slowing or stopping as not to injure them, although he did not testify that his slowing or stopping was in any wise delayed or impeded because of that situation. The possibility of injury to such children was a subject difficult if not impossible to prove with any exactitude. We conclude that the average man is familiar with the results or possible results of abrupt deceleration, as he is with rates of speed. The average jury is as good a judge of that at it is of many other

things, such as, for instance, individual reaction time and the zone of peril. The facts and circumstances are usually the best (and only) evidence and in and of themselves constitute sufficient basis for the forming of the jury's judgment. Hence the whole circumstances were probative facts from which the jury could and should have taken the safety of the family into consideration, as appellant rightfully argued to the jury.

■ It is contended that the evidence given by the witness Fickert was erroneously admitted because too remote. He was outside his gas station on the highway "about a half a mile" straight north of the collision scene. He saw the DeSoto, going south, pass two cars. It was then traveling (his estimate) 100 mph. He heard the crash and went to the scene. The incident was associated closely in place and time and by sound and is somewhat similar to that evidence which was approved (as to witnesses one-half to three-quarters mile away) in Douglas v. Twenter, 364 Mo. 71, 259 S.W.2d 353(3). Furthermore, the driver of the DeSoto testified under cross-examination that "practically since I hit [Highway] 61–67" he had been traveling at the rate of 60 mph. The inference could be drawn that he was traveling a fairly constant speed, so to "connect up" with his speed at the time of the collision, and so to corroborate the defendant's evidence of speed at the scene.[11] The continuous speed connection question is close, but under these circumstances the fact that the plaintiff drove a *constant* speed would not have been collateral because it was admissible in chief, even though it did have the effect of impeaching the witness as to the *rate* of speed he traveled.[12]

9. Burge v. Wabash R. Co., 244 Mo. 76, 148 S.W. 925; Pennington v. Carper, Mo., 309 S.W.2d 596; Green v. Guynes, Mo., 235 S.W.2d 298; Pelzer v. Zeltmann, Mo.App., 108 S.W.2d 980.

10. See Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9, 11; Strother v. Dunham, Mo.App., 193 S.W. 882, 885.

11. Long v. Mild, 347 Mo. 1002, 149 S.W. 2d 853; Shepard v. Harris, Mo., 329 S.W.2d 1.

12. See 98 C.J.S. Witnesses § 633b, p. 654; Weaver v. Scofield, Mo.App., 198 S.W.2d 240, 243.

Complaint is made of defendant's verdict-directing instruction, which is in part as follows:

* * * if you further find that the defendant, Shirley Ann Johnson and the said Ford Prefect motor vehicle at said time and place were in a position of imminent peril and immediate danger of being struck and injured by said DeSoto motor vehicle, if so, and that plaintiff Anthony Bernard Wood saw, or by the exercise of the highest degree of care could have seen the defendant Shirley Ann Johnson and said Ford Prefect motor vehicle in such position of imminent peril, if you so find, in time thereafter by the exercise of the highest degree of care, with the means then at hand, and with safety to himself and his said automobile and others, to have slackened the speed of said motor vehicle and stopped same, and thereby could have prevented said collision, if so, and *that plaintiff Anthony Bernard Wood failed to slacken the speed of said DeSoto motor vehicle and stop same; and if you further find that in so failing to slacken the speed of said DeSoto motor vehicle and stop same, if so, plaintiff Anthony Bernard Wood was negligent, and that as a direct and proximate result of the negligence of plaintiff Anthony Bernard Wood, if any, the vehicles collided,* and defendant was thereby injured, if so, then the Court instructs you your verdict shall be for the defendant, Shirley Ann Johnson on her counter-claim and against the plaintiff on his petition, and this is true even though you may find and believe from the evidence that Shirley Ann Johnson was also negligent in getting into such position of imminent peril, if any, and that such negligence of Shirley Ann Johnson, if any, contributed to cause said collision and her injuries, if any.

The criticism is that the instruction fails to relate back to the moment when Wood discovered the peril and to require that Wood *thereafter* failed to slow and stop; that as such it permits a finding on the basis of antecedent negligence; and that it is contradictory of plaintiff's primary negligence instruction. We think the argument can best be demonstrated by the dissenting opinion of Kemp, J., in White v. Kansas City Public Service Co., Mo.App., 140 S.W.2d 711, 713. The writer of that opinion stated that the meaning of the instruction could be made clearly manifest by inserting the simple word "so" as a preface to the questionable words of execution, or by replacing them by the words "failed so to do." The portion of the instruction attacked is almost an exact copy of that approved by the Kansas City Court of Appeals in Bastian v. Capoot, Mo.App., 270 S.W.2d 94, although the precise question was not there involved. It should require no citation of authority that an instruction is to be read as a whole and a jury is to be credited with ordinary human intelligence; that our whole Missouri humanitarian doctrine has become a wilderness [13] without a Moses and with it instructions have become difficult and frustrating to practicing lawyers and judges; that arguments as to the *technical* meaning can sometimes be extended and refined until we reach the medieval position of contending as to how many angels should be able to dance on the head of a pin. Nevertheless, those who wish to claim the largess resulting from this charitably confusing humanitarian doctrine have the burden of presenting it to the jury so that the distinction between the beneficence of such doctrine and the hard realities of primary and contributory negligence will not be mistaken one for the other. On this subject the Supreme Court has spoken and the instruction is bad.[14]

Respondent attempts to distinguish this instruction from that in Stith v. St. Louis

---

13. Storckman, J., in Price v. Nicholson, Mo., 340 S.W.2d 1, 13.

14. White v. Kansas City Public Service Co., 347 Mo. 895, 149 S.W.2d 375; Har-

Public Service Co., 363 Mo. 442, 251 S.W. 2d 693, 700, 34 A.L.R.2d 972, because the instruction here involved includes the words *"and thereby could have prevented said collision."* So does that in the Stith case ("and thereby have avoided striking the plaintiff"). She also points out that this instruction requires a finding "that as a direct and proximate result of the negligence of plaintiff * * * *the vehicles collided."* So does that in the Stith case ("that such negligence, if any, directly caused said streetcar to strike plaintiff").

row v. Kansas City Public Service Co., Mo., 233 S.W.2d 644; Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 34 A.L.R.2d 972; see also

Since the judgment must be set aside and the case must be remanded for the foregoing reason, we deem it unnecessary to pass upon the remaining contentions of the appellant. The evidence may not be the same upon the next trial.

The judgment is reversed and the case is remanded.

STONE, P. J., and McDOWELL, J., concur.

Johnson v. St. Louis Public Service Co., 363 Mo. 380, 251 S.W.2d 70, 75–76; Cunningham v. Thompson, Mo., 277 S.W.2d 602, 610.