William TUCKER, an Infant, by Maxine Tucker, His Next Friend (Plaintiff), Respondent,

v.

Nathan TAKSEL and Ruth Taksel (Defendants), Appellants.

No. 30713.

St. Louis Court of Appeals.

Missouri.

April 18, 1961.

Motion for Rehearing or for Transfer to Supreme Court Denied May 8, 1961.

F. X. Cleary, C. M. Kirkham, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for (defendants) appellants.

David G. Dempsey, Barnhart & Sommers, St. Louis, for (plaintiff) respondent.

JAMES D. CLEMENS, Special Judge.

This is an action for damages by an infant against his parents' landlords, who appeal from a $7,000 judgment. Defendants claim (1) that plaintiff's evidence was insufficient to establish liability and (2) that plaintiff's verdict-directing instruction was erroneous. The first point calls for a statement of the evidence most favorable to plaintiff.

Plaintiff was injured by falling through an open, unscreened window of his family's second floor apartment. Plaintiff, who was then 13 years old, was playing handball against a wall when the ball bounced near the window. He grabbed for the ball with his right hand and tried to brace himself with his left hand against the window sill. The sill broke loose and fell outward to the ground, as did plaintiff. A description of the window and its surroundings: In the brick wall of the apartment there is a set of three double-hung windows. The wide center window is flanked by two narrow windows. The wall is more than a foot thick, and the window panes are flush with the outer surface of the wall. On the inner side of the panes at their base is a ledge or window seat running the width of the three windows and extending inward about one foot. Upward from this inner ledge there are trimmed window jams on each side and overhead, each of similar width. Outside the apartment walls, this set of three windows was framed by decorative trim lumber, of 6 to 8 inches in width and extending outward from the brick wall about that distance. Within this outer framework and, at its base, was the sill. The windows, when closed, rested on the inner top surface of this sill. The sill, in turn, rested upon the wall and the base of the outer framework.

The Tuckers had moved into the six-apartment building the preceding month. Their 3-room apartment was furnished with furniture, floor coverings, drapes, blinds, etc., but the Tuckers furnished their own utensils, china and bedding. The expense of all utilities was included in their $20 weekly rental. Mrs. Bonney was defendants' resident manager. She rented the apartment to the Tuckers and collected the weekly rent. Mrs. Bonney gave the Tuckers a key to the apartment, and retained a duplicate. She had a key to each apartment, which she occasionally used for entry for such purposes as decorating, replacing fuses, and turning off plumbing. On one occasion she had entered the Tuckers' apartment to let out their dog when they were away. When they rented the apartment the Tuckers were told by Mrs. Bonney that the defendants were "good to repair." She told them that if anything was needed they were to let her know and she would get in touch with the defendants. The de-

fendants did in fact make all repairs inside and outside the building, of furniture, plaster, plumbing, porches, windows and, in Mrs. Bonney's words, "That went for window sills or anything else." The defendant had previously replaced a defective window sill of the apartment above the Tuckers. After plaintiff's injury the defendants replaced the window sill in question.

Soon after renting the apartment, the Tuckers noticed that the window sill was settled at one end and left a half-inch gap between the sill and the bottom of the screen. The sill "was kind of brown looking" and "looked like it hadn't been painted for quite some time." Mr. Tucker stuffed paper into the gap to keep insects out and told Mrs. Bonney of the condition. After plaintiff's fall the Tuckers examined the fallen sill and the outer framework to which it had been attached, and found parts of them to be "rotten, black and spongy-looking."

Plaintiff does not seek to recover on the theory that defendants were negligent in failing to repair the window because it was an area in common use with other tenants. Neither does plaintiff rely on a breach of an express covenant by defendants to repair the window sill, nor does plaintiff claim to be a lodger to whom defendants owed an inn-keeper's duty; instead, he acknowledges the relation between the defendants and his parents to be that of landlord and tenant. And, plaintiff acknowledges the rule that where a landlord surrenders the full control of the premises to a tenant, the landlord is not obligated to repair defects in the premises and is, therefore, not liable to the tenant for injuries arising from such defects. His theory is that where a landlord does not surrender full control of the premises to the tenant, but retains partial control for the purpose of making repairs, then the landlord is obligated to make such repairs, and if he negligently fails to do so he is liable to the tenant in damages for ensuing injuries.

The text books and cases often resolve such an issue as this by starting with the general proposition that an inn-keeper owes a duty to his lodger to keep the premises in a safe condition or, its corollary, that a landlord does not owe such a duty to his tenant. They then proceed to a solution by determining whether the relationship is that of inn-keeper and lodger or that of landlord and tenant. This process of affixing a label to the relationship seems redundant. A study of the cases will demonstrate that the issue of liability of the owner to the occupant of his premises is really decided by determining whether the owner has retained control of the premises to himself, or has surrendered that control to the occupant. See Martin v. Shryock Realty Co., 236 Mo.App. 1265, 163 S.W.2d 804; Marden v. Radford, 229 Mo.App. 789, 84 S.W.2d 947; and Peterson v. Brune, Mo., 273 S.W.2d 278, loc. cit. 281, where the Supreme Court said: "The ultimate question, of course, is whether the landlord did retain control of the particular portion of the premises under consideration. This, because the foundation of the landlord's duty is based upon his retention of control."

In the case of Martin v. Shryock Realty Co., supra, where the occupant sued the owner for injuries based on negligent failure to repair, it was held that the occupant's otherwise exclusive possession of an apartment was not destroyed merely by the owner's retention of a duplicate key. But, in Marden v. Radford, supra, it was held that the owner's retention of a key would warrant an inference that the owner intended to retain dominion of the premises. It has also been held that an owner's agreement to repair an apartment did not of itself show such retention of control as to impose liability. See Lahtinen v. Continental Bldg. Co., 339 Mo. 438, 97 S.W.2d 102(3). But such an agreement, coupled with retention of a duplicate key and the making of such repairs after a casualty, might well give rise to an inference that the owner did reserve partial control for the purpose of making such repairs. Thus it was held in Gray v. Pearline, 328 Mo. 1192, 43 S.W.2d 802(4), that although repairs

made by the owner after the occupant's injury did not in itself establish the owner's right of control, such repair was some evidence of that right.

It was plaintiff's evidence: that defendants agreed to and did, in fact, make repairs, the defendants' manager retained and used a key that permitted entrance for that purpose, and that the defendants did, in fact, repair the window sill after the accident. Upon this evidence reasonable minds might well conclude that defendants retained their right to control the apartment for the purpose of making repairs in general and this window sill in particular. If the defendants retained such right of control, they would not be relieved of liability by the fact that the Tuckers were in general possession subject to that right. Peterson v. Brune, supra, and Thompson v. Paseo Manor South, Inc., Mo.App., 331 S.W.2d 1. So, we hold that the plaintiff was entitled to go to the jury on the issue of defendants' right of control.

Defendants also question the sufficiency of the evidence to show their knowledge of the defective condition of the window sill. The evidence recited above as to the appearance of the sill before and after the accident, and Mr. Tucker's report to Mrs. Bonney as to the gap between the window sill and the screen, was sufficient for reasonable minds to infer that defendants did have knowledge of the defective condition. Compare Kroeker v. Stecken, Mo.App., 31 S.W.2d 299; Bleisch v. Helfrich, Mo.App., 6 S.W.2d 978, and Buchanan v. Wolff, Mo.App., 105 S.W.2d 26.

Accordingly, we hold that the trial court correctly denied defendants' motion for a directed verdict.

Plaintiff's verdict-directing instruction No. 2 is challenged by defendants on the ground that it fails to require a finding that defendants retained control in order for plaintiff to recover. The instruction is in two paragraphs. The first hypothesizes the elements of control and directs, that if the jury so finds, then the defendants were obligated to keep the premises in a reasonably safe condition. The second paragraph hypothesizes the elements of the dangerous condition of the window sill, defendants' knowledge thereof, defendants' negligence, and plaintiff's resultant fall and injury, and directs that if the jury so finds, the plaintiff is entitled to recover. The beginning and ending of each paragraph is as follows:

"The Court instructs the jury that if you find * * * (elements of control) * * * then the Court instructs you that under the law of the State of Missouri the defendants owed the duty to exercise ordinary care to keep all exterior portions of said building in a reasonably safe condition for all reasonably anticipated use thereof.

"Therefore, the Court instructs the jury that if you find * * * (elements of condition of premises, scienter, negligence and injury) * * * then the Court instructs you that plaintiff is entitled to recover and your verdict herein should be in favor of the plaintiff and against the defendants."

Defendants point out that the second paragraph, which directs a verdict, is not made dependent upon the first paragraph, and thereby ignores the necessity of a finding in favor of the plaintiff on the issue of control being retained by the defendants.

It is fundamental that a verdict-directing instruction must hypothesize every fact essential to a plaintiff's right to recover. It follows that an instruction which authorizes a verdict upon a finding of less than the essential facts is error. Shafer v. Southwestern Bell Tel. Co., Mo., 295 S.W. 2d 109(16–17); Fadler v. Chicago R. I. & P. R. Co., Mo.App., 251 S.W.2d 835 (4–5); and Marr v. Marr, Mo.App., 319 S.W.2d 920(5). This rule is usually applied to an instruction which entirely omits an essential element. Here, we must determine the applicability of the rule to an instruction

which states an essential element but does not relate it to the verdict-directing portion of the instruction.

It seems to us that at best the instruction is confusing, and at worst it is a misdirection. Reading the whole instruction, the jury would be left to speculate whether the element of control was a necessary part of plaintiff's case. On the other hand, the second paragraph is complete in meaning and misdirects a verdict because of the omission.

In the case of O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S.W. 55(6), plaintiff's verdict-directing instruction was in two paragraphs. The first called for the finding of certain essential facts but contained no conclusion. The second paragraph called for the finding of other facts, and ended by directing a verdict. The Supreme Court condemned the instruction for its failure to require a finding of the essential elements of plaintiff's case. In the recent case of Wood v. Ezell, Mo.App., 342 S.W.2d 503(10), a humanitarian instruction was held erroneous for the failure of the verdict-directing portion of the instruction to relate back to the necessary premise on which it was based. That case cites the dissenting opinion of Kemp, J., in White v. Kansas City Public Service Co., Mo.App., 140 S.W.2d 711, 713, which dissent was upheld in White v. Kansas City Public Service Co., 347 Mo. 895, 149 S.W.2d 375(4–6). The gist of the opinion is that not only must the necessary elements of a plaintiff's case be *stated* in a verdict-directing instruction but it must be clear to the jury that the verdict *depends* upon a finding of those elements.

■ We conclude, therefore, that upon both reason and precedent, the giving of plaintiff's instruction No. 2 was prejudicially erroneous. Plaintiff contends that the jury could not have been misled by this instruction because the element of control was covered by defendants' converse instruction. Such an error is not cured by a correct converse instruction because that creates a conflict, and thus compounds the

error. State ex rel. Long v. Ellison, 272 Mo. 571, 199 S.W. 984(4); Herr v. Ruprecht, Mo., 331 S.W.2d 642; loc. cit. 652.

■ The case must be remanded for a new trial because of the error in giving plaintiff's instruction No. 2. There being no question raised on this appeal as to the issue of damages, there should be no further litigation of that issue. Sec. 512.160, subd. 3, R.S.Mo.1959, V.A.M.S.; Beckwith v. Standard Oil Co., Mo., 281 S.W.2d 852(11). The judgment is therefore ordered reversed and the case remanded for a new trial on the issue of liability only.

ANDERSON, P. J., and RUDDY, J., concur.

WOLFE, J., not participating.